IN the MATTER OF the ESTATES OF Sally Jo ZIM-
MER and Hans P. Zimmer, Deceased: WISC-TV—
CHANNEL 3/MADISON, The Capital Times Com-
pany, and The Wisconsin Freedom of Information
Council, Appellants,

v.

Michael MEWIS, Personal Representative of the
Estate of Sally Jo Zimmer and Hans P. Zimmer and
Peter Zimmer, Respondents.

Court of Appeals

*No. 88-0390. Submitted on briefs February 6, 1989.—Decided
May 25, 1989.*

(Also reported in 442 N.W.2d 578.)

122

124

For the appellants the cause was submitted on the briefs of *Jonathan C. Aked* and *Linda M. Clifford,* and *LaFollette & Sinykin,* of Madison.

For the respondents the cause was submitted on the brief of *James W. Harris* and *Paula K. Doyle,* and *Larkin, Jackson, Harris & Glass, S.C.,* of Dodgeville.

Before Gartzke, P.J., Dykman and Eich, JJ.

EICH, J. The Wisconsin Freedom of Information Council, the Capital Times Company and WISC-TV (collectively, the "news media") appeal from an order approving a settlement in a probate proceeding and directing that the terms and conditions of the settlement remain confidential. The issue is whether sec. 59.14, Stats., which requires clerks of circuit court and registers in probate to make all records in their custody open and available to the public, and the Wisconsin Open Records Law, secs. 19.31 to 19.37, Stats.,[1] require disclosure of the terms of the settlement. We believe they do, and we therefore reverse the order.

The facts are not in dispute. Sally Jo and Hans Zimmer were murdered on or about May 23, 1983.

---

[1] The access portions of the open records law give all members of the public the right to inspect all public records. The essential provision of the open records law is that "any person who requests inspection or copies of a [public] record . . .. has a right to inspect [it]." Secs. 19.32(2), 19.32(3) and 19.35(1)(a), Stats. The law includes "any court of law" in its definition of the persons and entities subject to disclosure demands. Sec. 19.32(1).

Shortly thereafter, their adopted son, Peter Zimmer, then fourteen years old, entered a plea of no contest to a juvenile delinquency petition alleging that he killed them.[2] He was ordered institutionalized until his eighteenth birthday.

The Zimmers left no wills, and the probate court eventually determined that Peter Zimmer was their sole heir. As such, he normally would be entitled to inherit their entire estates.[3] However, sec. 852.01(2m)(a), Stats. (1983–84), prohibits one who "feloniously and intentionally" kills another person from inheriting any part of that person's estate. Because sec. 852.01(2m)(b), as it read at the time, required proof of a judgment of conviction in order for the prohibition to attach, a question arose as to Zimmer's eligibility to inherit the estates, for juvenile delinquency proceedings do not result in criminal convictions.[4] In April, 1987, the personal representative of the parents' estates brought an action to determine heirship, alleging that Zimmer, having "feloniously and intentionally" killed his parents, should be prohibited from inheriting under sec. 852.01(2m), Stats. Zimmer opposed the petition and requested a jury trial, which was scheduled for later in the year.

---

[2] At the time, the juvenile code allowed only juveniles sixteen or older to be waived into adult court. In the wake of the Zimmer case, the laws were amended to allow waiver in first or second degree murder cases if the juvenile is fourteen or older. Sec. 880h, 1987 Wis. Act 27, amending sec. 48.18, Stats.

[3] The trial court estimated the estates to be worth just under $89,000. The general inventories filed in probate court, however, indicate a total inheritance—including property not subject to administration—of some $375,000.

[4] Here, too, the laws were amended after this case to deny inheritance to one adjudged delinquent in connection with the decedent's death. Sec. 852.01(2m)(bg), Stats.

In June, the parties reached a settlement in the case. They filed the settlement agreement with the court and sought its approval. The agreement purportedly resolved all disputes between the personal representative and Zimmer and proposed a final distribution of the two estates. It also contained language purporting to keep the terms of the settlement confidential and excluding them from the public record. The court held a brief hearing, at which no evidence was taken, and approved the settlement. The court also granted the parties' request to place the agreement under seal.

Sometime thereafter the news media filed a written request with the court to allow them access to the agreement. The trial court scheduled a hearing on the request. Again, no evidence was taken, but the court heard the arguments of counsel for the news media and the personal representative, who opposed the media's request. The news media argued that sec. 59.14, Stats., together with various provisions of the open records law gave them a right to see the stipulation. The record does not reveal the nature of the estate's objections to opening the file.

The trial court denied the media's request. Recognizing that the stipulation was a public record subject to sec. 59.14, Stats., and the open records law, and, further, that the law and public policy of the state presume that the public has a right to inspect court records, the court proceeded to weigh the competing interests and ruled that the file should remain closed. The court also entered an order allowing the news media to intervene in the action for the limited purpose of contesting the open records issue.[5]

---

[5] Contrary to the estate's argument, and for the reasons stated in *C.L. v. Edson,* 140 Wis. 2d 168, 174–77, 409 N.W.2d 417,

The estate argues first that this is not an "open records" case at all, but one involving the court's "inherent authority" to control judicial proceedings. It contends that the trial court "has the inherent power to seal its files in the administration of justice," and that it properly exercised that power in this case. As we have noted, both the trial court's analysis of the issues and its ultimate decision were based on the common and statutory law governing the public's access to public records. There was no discussion of the court's inherent powers. Nonetheless, the estate argues that we should sustain the decision in deference to the inherent authority of the court to administer justice. We disagree.

The estate's argument is grounded on three Wisconsin cases: *State ex rel. Bilder v. Delavan Tp.,* 112 Wis. 2d 539, 334 N.W.2d 252 (1983); *State ex rel. Journal Co. v. County Court,* 43 Wis. 2d 297, 168 N.W.2d 836 (1969); and *State ex rel. Ampco Metal v. O'Neill,* 273 Wis. 530, 78 N.W.2d 921 (1956). In *Journal Co.,* the trial court suppressed its own decision in a child custody case in order to keep its terms confidential while discussions were undertaken with judges in another country in which the decision would have to be enforced. The supreme court, noting simply that the "inherent power[s] of the court" can, in some cases, "go[ ] beyond those conferred by statute," stated that it could find no authority permitting a court to withhold a decision from the public and overturned the trial court's action. *Id.,* 43 Wis. 2d at 311–12, 168 N.W.2d at 843. *Ampco Metal* was an "open courtroom case," not an open records case. It involved testimony relating to alleged trade secrets and it presented, in the court's words, one of "those rare situations where justice cannot be properly adminis-

419–20 (Ct. App. 1987), we see no error in the trial court's after-the-fact order allowing the news media to intervene in the case.

tered" without taking certain evidence *in camera. Id.,* 273 Wis. at 539–40, 78 N.W.2d at 926. We do not see either opinion as justifying the conclusion that the court's action in this case was undertaken in the proper exercise of its inherent powers.

The last case, *Bilder,* involved the sealing of court records. The action concerned the suspension of a town police chief, and at some point the parties settled their dispute. In approving the settlement, the trial court ordered the file sealed on the officer's representation that opening the pleadings and various exhibits to the public would damage his reputation. As in this case, several newspapers intervened in the proceedings seeking an order opening the file. Again, as here, they based their right to access on sec. 59.14, Stats., and the open records law. The supreme court affirmed the trial court's decision requiring disclosure. The court noted first that once the exhibits became part of the court proceedings, they became public records as a matter of law under sec. 59.14, Stats., and that that statute gives the public the "absolute right" of access to such records, subject only to two restrictions not relevant here.[6] *Bilder,* 112 Wis. 2d at 553, 334 N.W.2d at 260.

The court then stated:

> [T]here may be a third exception to the . . . "absolute right" of examination. The circuit court under its inherent power to preserve and protect the exercise of its judicial function of presiding over the conduct of judicial proceedings has the power to limit

---

[6] The "exceptions" recognized by the court would allow closure in cases where it is specifically authorized by statute, or where disclosure would violate constitutional rights. *Bilder,* 112 Wis. 2d at 554–55, 334 N.W.2d at 260. The estate does not suggest that there is any statutory or constitutional authority for closure in this case.

public access to judicial records when the administration of justice requires it. *Id.* at 556, 334 N.W.2d at 261.

■ The court went on to state, however, that before any question of inherent powers would even arise, the party seeking closure must "overcome the legislatively mandated policy favoring open records . . .." *Bilder,* 112 Wis. 2d at 556, 334 N.W.2d at 261. The court then discussed the reasons advanced for closing the file in light of state statutes and other indicia of public policy favoring access and concluded that it need not decide "whether a circuit court may ever use its inherent power to seal court documents," because "Bilder has failed to overcome the legislative policy set forth in sec. 59.14 that the denial of public examination of a court record is contrary to the public policy and the public interest favoring open court records." *Id.* at 559, 334 N.W.2d at 262. We reach the same conclusion here. The issue of inherent powers does not arise because the strong public policy favoring access to court records has not been overcome.

As we have noted, sec. 59.14, Stats., requires registers in probate, in addition to circuit court clerks, to open their records to the public. In addition, the "Declaration of Policy" accompanying the open records law provides in part that

> all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers . . . who represent them. Further, providing persons with such information is declared to be an essential function of a representative government . . .. To that end, *ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access,* consistent with the

130

conduct of governmental business. *The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.*

Sec. 19.31, Stats. (emphasis added).

We begin our inquiry, then, with the presumption that the public has a right to inspect the settlement agreement, that any exceptions to the rule of disclosure must be narrowly construed, and that denial of access to the agreement is contrary to the public interest and will be tolerated only in the "exceptional case." *Oshkosh Northwestern Co. v. Oshkosh Library Bd.,* 125 Wis. 2d 480, 482, 373 N.W.2d 459, 461 (Ct. App. 1985). And the fact that the parties seeking disclosure are not private citizens with a particularized interest in the records, but rather representatives of the commercial news media, does not in any way diminish their right of access to the materials. Indeed, "if the media is denied access to the affairs of government, the public for all practical purposes is denied access as well. A democratic government cannot long survive that burden." *State ex rel. Newspapers v. Showers,* 135 Wis. 2d 77, 81, 398 N.W.2d 154, 156 (1987).

A third party's right to disclosure of public records under ch. 19, Stats., is not absolute; it is presumptive: "[T]he general presumption of our law is that public records shall be open to the public unless there is a clear statutory exception, unless there exists a limitation under the common law, or unless there is an overriding public interest in keeping the public record confidential." *Hathaway v. Green Bay School Dist.,* 116 Wis. 2d 388, 397, 342 N.W.2d 682, 687 (1984). The estate does not claim entitlement to any statutory exemption from the provisions of the open records law, and we are satis-

fied that none exists. Nor does it argue any common law exceptions. When this is the case, the presumption of disclosure is implemented through a "balancing" of the public interest of free access against the public interest in nondisclosure.

Where a request for disclosure is made to the custodian of the record, the custodian "must weigh the competing interests involved and determine whether permitting inspection would result in harm to the public interest which outweighs the legislative policy recognizing the public interest in allowing inspection." *Newspapers, Inc. v. Breier*, 89 Wis. 2d 417, 427, 279 N.W.2d 179, 184 (1979). Before access may be denied, the "strong presumption" of disclosure must be rebutted by the party advocating closure. *C.L. v. Edson*, 140 Wis. 2d 168, 182, 409 N.W.2d 417, 422 (Ct. App. 1987). If the custodian denies access, he or she "must state specific public-policy reasons for the refusal . . . [and] must satisfy the court that the public-policy presumption in favor of disclosure is outweighed by even more important public-policy considerations." *Newspapers, Inc.*, 89 Wis. 2d at 427, 279 N.W.2d at 184. In short, "there is an absolute right to inspect a public document in the absence of *specifically stated sufficient* reasons to the contrary." *Id.*, quoting *Beckon v. Emery*, 36 Wis. 2d 510, 518, 153 N.W.2d 501, 504 (1967) (emphasis in original).

In this case, the circuit court was, in effect, acting as the custodian of the record when it decided to seal the file and stated its reasons for doing so. Our task on appeal, therefore, is to "decide as a matter of law whether [those] reasons . . . are sufficient." *Bilder*, 112 Wis. 2d at 557, 334 N.W.2d at 261.

The trial court, believing that if the terms of the settlement agreement were to be made public the parties

would repudiate it and proceed to trial, gave the following reasons for sealing the record: (1) because of the need to impanel a large number of prospective jurors and to sequester the jurors eventually selected during a week-long trial, the trial would be expensive to the county; (2) "projected attorney fees" billed to the estate could approach $20,000; and (3) the deceased parents' relatives feared any contact with Zimmer. Then, balancing those factors against the public interest in access to the records, the court concluded that disclosure was not warranted.

We have no doubt that the trial court was acting in good faith and in the honest belief that the balance struck was a proper one. We, however, strike it in the other direction.

First, as to the possibility that disclosure of the terms of the settlement might lead the parties to void it and proceed to an expensive trial, it is just that—a possibility—for no evidence was taken on the question. Moreover, we do not believe that the public's right to inspect public records is necessarily outweighed by the fact that such inspection might possibly lead to a trial which might, in turn, result in added expense to the county and the parties. The state and county bear a large portion of the cost of any trial, as do the litigants. That is the law. And the parties to this lawsuit were willing to take their claims and defenses to trial—thus bearing their own expenses for costs and attorney fees—up to the time the case was settled. We do not consider the interest in avoiding the possible expenses of a possible trial to constitute the type of "overriding public interest" necessary to overcome the strong presumption favoring disclosure.

Nor are we persuaded by the estate's suggestion that the trial court's reference to possible trial expenses was

just another way of implementing the public policy encouraging settlement of court cases, and that this policy should take precedence over any interest of the public in access to the settlement documents. While there are no Wisconsin cases on point, we favor the rationale of the United States Court of Appeals for the Third Circuit in *Bank of America Nat. Trust v. Hotel Rittenhouse,* 800 F.2d 339 (3rd Cir. 1986), resolving a similar issue.

The federal courts recognize an open records presumption nearly identical to that existing in Wisconsin—there is a "strong common law presumption" favoring access to public records, which may be overcome only by a showing of an "overriding" interest in closure. *Bank of America,* 800 F.2d at 344. And, to implement the presumption, federal courts, like our own, must "balance the factors favoring secrecy against the . . . presumption of access." *Id.* The *Bank of America* court, ruling that the parties' agreement to keep the terms of a settlement confidential could not overcome the presumption, reasoned as follows:

> We acknowledge the strong public interest in encouraging settlement of private litigation. Settlements save the parties the substantial cost of litigation and conserve the limited resources of the judiciary.
>
> . . ..
>
> Once a settlement is filed in the district court, it becomes a judicial record, and subject to the access accorded such records.
>
> Such public access serves several . . . important interests . . .. First, it promotes "informed discussion of governmental affairs by providing the public with [a] more complete understanding of the judicial

system" and the "public perception of fairness which can be achieved only by permitting full public view of the proceedings." Disclosure of settlement documents serves as a check on the integrity of the judicial process.

. . ..

Moreover, the district court did not rely on any particularized showing . . . but instead only on the general interest in encouraging settlement . . .. [T]hat is not enough. Even if we were to assume that some settlements would not be effectuated if their confidentiality was not assured, the generalized interest in encouraging settlements does not rise to the levels of interests that . . . may outweigh the public's . . . right of access. [Citations omitted; bracketing in original.]

*Id.*, 800 F.2d at 344–46. We adopt that rationale here and hold that a generalized interest in encouraging settlement of litigation does not override the public's interest in access to the records of its courts.

As indicated, the trial court also referred to the other relatives' "fear" of Zimmer as a compelling reason to deny access to the settlement documents, although it conceded that it had no "evidence" on which to base this "finding." The estate, picking up on the court's statement, asserts in its brief—again without evidentiary support—that disclosure would cause "trauma" to the relatives and would "harm [them] by . . . reviving their fears of Peter Zimmer." The estate then states: "Such an effect offers no public benefit."

The question, however, is not whether revival of certain parties' fears is of benefit to the public. That is nonsensical. The question is whether avoiding the possibility of that revival is of such overriding *public* interest

135

that it should prevail over the public's right of access to court records. We believe it should not.

The estate has referred us to only two cases, both from other states, in which the sealing of depositions and other court files was upheld because of danger to the parties. In one, *News-Press Pub. Co., Inc. v. State,* 345 So. 2d 865, 867 (Fla. Dist. Ct. App. 1977), the court, in *dicta,* simply acknowledged that access to sealed depositions in a first degree murder case might be denied under the court's "inherent power" upon a showing that disclosure would endanger a person's life. In the other, *Estate of Hearst,* 67 Cal. App. 3d 777, 784 (1977), certain records in the probate of the estate of a member of a well-known newspaper publishing family were ordered sealed in light of "serious danger" to family members who had been "target[s] of a series of terrorist attacks." As we have noted, and as the trial court itself conceded, there is no evidence in this case—none was taken at the hearing—to support even a possibility that members of the Zimmer family would face any danger by allowing public access to the settlement records. Certainly there is no suggestion that their lives are in danger or that they would be subject to the type of threats at issue in the *Hearst* case.

*C.L. v. Edson, supra,* is more to the point. In that case, a newspaper intervened in a civil action seeking to compel disclosure of settlement documents that had been ordered sealed by the trial court. The case involved allegations that various persons associated with a hospital and psychiatric clinic had sexually abused several minors in their care. The lawsuit was settled, and the parties stipulated that the settlement records be sealed to protect the interests of the children and to " 'avoid further psychological trauma' " to them. *Id.,* 140 Wis. 2d at 174, 409 N.W.2d at 418–19. Unlike the situation here,

where the record contains only the trial court's surmise that a possible trial might revive the relatives' "fears," the trial court in *C.L.* heard expert testimony that the children could suffer psychological harm by allowing public access to the settlement papers. *Id.* at 184, 409 N.W.2d at 423.

On appeal, we concluded that in view of existing public knowledge of the case, such "potential harm" would be only "marginally damaging at worst," and rejected the argument that the public interest in the welfare of the children weighed against disclosure. *C.L.,* 140 Wis. 2d at 184, 409 N.W.2d at 423. There is no suggestion in the record before us that the trial court's concededly speculative reference to the relatives' "fear" of further contact with Zimmer is any less "marginal" than the children's interests in *C.L.*—interests we held to be subservient to the strong public interest in access to court records.

■■■■

Finally, to the extent that the court's discussion of the interests of the family may be considered a determination that their privacy interests override the public interest in disclosure, we reject that assumption as well. As we noted in *C.L.,* the argument that the "public interest in protecting the privacy of individuals outweighs the need for public disclosure . . . has been rejected in numerous cases." *Id.,* 140 Wis. 2d at 185, 409 N.W.2d at 423.

*By the Court.*—Order reversed and cause remanded with directions to grant the appellants' request for access to the court records.