**Margot ANDERSON, Plaintiff,**

v.

**HOME INSURANCE COMPANY, Defendant,**

and

**Frederick A. Lewis, Jr., M.D., and Frederick A. Lewis, M.D., P.C., Defendants–Appellees,**

and

**Concerning Yolanda Martinez, Appellant.**

**No. 94CA1846.**

Colorado Court of Appeals, Div. II.

Feb. 22, 1996.

Rehearing Denied March 21, 1996.

Certiorari Denied Oct. 15, 1996.

Kennedy & Christopher, P.C., Ronald H. Nemirow, Frank R. Kennedy, Denver, for Defendants–Appellee.

Fest, Jessel & Hemphill, LLC, Danny R. Hemphill, Bruce F. Fest, Boulder, Thomas D. Roberts, Asheville, North Carolina, for Appellant.

Opinion by Judge CRISWELL.

Yolanda Martinez appeals the district court's denial of her motion, pursuant to C.R.C.P. 121 § 1–5, to vacate a limited access order entered in this and a related action, in neither of which was she a party. We reverse the denial of her motion, vacate the

existing limited access order, and remand with directions.

The record on appeal includes the records in the two cases that are the subject of the limited access order, the entirety of which has been sealed in accordance with that order. In addition, the defendant, Frederick A. Lewis, Jr., and his professional corporation, have filed a "supplemental brief" with this court, a copy of which has not been provided to Martinez, which makes various references to that part of the record that Martinez has never seen.

Under these circumstances, we have limited our review of the record to that portion that has been disclosed to Martinez, and we have not considered Lewis' supplemental brief. We have considered only the court's initial order sealing all of the court files, the motion to vacate the limited access order, the transcript of the hearing on Martinez' motion, the court's order denying Martinez's motion, Martinez' motion to reconsider, and the court's order denying reconsideration. We have, of course, also considered Martinez' briefs and that brief submitted by Lewis, a copy of which was supplied to Martinez.

This review reveals the following:

Plaintiff, Margot Anderson, initiated the action at issue here against defendants, Dry. Frederick A. Lewis, Jr., Frederick A. Lewis, Jr., M.D., P.C., and The Home Insurance Company, which included, so Martinez alleges, a claim of medical malpractice against Lewis based, in part, on his use of computerized neuropsychological testing. A second case was a related probate proceeding.

In August 1993, the district court granted the parties' joint motion to dismiss the malpractice action with prejudice and to prevent access by any third person to any part of the court files in both cases. In the limited access order, entered pursuant to C.R.C.P. 121 § 1–5, the court found that "[g]ood cause has been shown for sealing and restricting access to the Court's files in these cases...."; that "[t]he parties have bargained for and agreed to extensive confidentiality, non-disclosure, [and] related enforcement...."; and that "the privacy interests of the parties outweighs the public interest in access to the Court files herein." The court's order, however, does not reveal even the general nature of the parties' privacy interests that required such protection, and that order was, itself, subject to its own limited access restrictions.

Simultaneously, the court "adopted and approved" the parties' settlement agreement, which it also sealed. That agreement included confidentiality and non-disclosure provisions, and the court directed that these provisions were to be enforced, if necessary, through contempt proceedings.

Approximately one year later, Martinez moved, pursuant to C.R.C.P. 121 § 1–5.4, for the court to vacate its order limiting access to the files. She alleged that she was the plaintiff in an action against another insurance company for wrongfully denying insurance benefits to her, based, in part, on examinations given by Lewis; that Lewis had performed computerized neuropsychological testing in her case that was identical to the testing used on the plaintiff in the *Anderson* case; that such testing methods by Lewis were invalid; that he was not qualified to use or to interpret, and he had been ordered to cease, such testing by the Colorado Board of Medical Examiners in 1990; but that he nevertheless continued to perform such tests. She asserted that the sealed files might contain information relevant to the question whether the insurer defendant in her action should have been aware of Lewis' alleged improper practices.

At a hearing on Martinez' motion, her counsel represented that Lewis worked almost exclusively for insurance companies performing independent medical examinations; that he consistently administered computerized neuropsychological testing to a certain class of victims he examined; and that he had relied on such testing to conclude, without exception, that such victims were malingering or were suffering from a preexisting condition, thereby resulting in the insurance companies' refusal to pay benefits.

Lewis and Martinez stipulated that Lewis had continued to perform independent medical examinations for insurance companies, and Martinez' counsel made an offer of proof to the effect that Lewis continued to use the

subject testing procedures until at least April 1994.

At the conclusion of the hearing, the court, accepting this offer of proof as true, denied Martinez' motion and reaffirmed its prior orders restricting access to the files. In response, Martinez initiated this appeal. Lewis and his professional corporation have appeared in opposition; none of the other parties has participated in these appeal proceedings. Martinez argues that the court erred in initially restricting access to all of the court files in the *Anderson* cases because, contrary to the court's finding, the harm to the privacy of the parties did not outweigh the public's presumptive interest in open access to court files. Lewis counters that the court's sealing order was warranted because (1) it protected the parties' legitimate expectation of privacy; (2) it encouraged settlement of the parties' claims without a trial; and (3) the parties acted in reliance thereon. Based on the record before us, we agree with Martinez.

■ In the Open Records Act, § 24–72–201, C.R.S. (1988 Repl.Vol. 10B), the General Assembly has declared that, with certain specified exceptions, it is "the public policy of this state that all public records shall be open for inspection by any person at reasonable times...." This public policy means that, unless there exists a legitimate reason for non-disclosure, any member of the public is entitled to review all public records. There is no requirement that the party seeking access must demonstrate a special interest in the records requested. *Denver Publishing Co. v. Dreyfus,* 184 Colo. 288, 520 P.2d 104 (1974).

The Act restricts the public's right to obtain access to court records, if such inspection "is prohibited by rules promulgated by the supreme court or by the order of any court." Section 24–72–204(1)(c), C.R.S. (1988 Repl.Vol. 10B). And, our supreme court has promulgated C.R.C.P. 121 § 1–5, which authorizes a district court to "limit access" to court files only "upon a finding that the harm to the privacy of a person in interest outweighs the public interest." C.R.C.P. 121 § 1–5.2. Further, even if any court files are initially made subject to a limited access

order, such order must be reviewed "upon the motion of *any* person." C.R.C.P. 121 § 1–5.4 (emphasis supplied).

Whether the supreme court rule was adopted pursuant to a legislative grant of authority under § 24–72–204(1)(c) or whether it was adopted pursuant to the judicial power granted to the supreme court by Colorado's Constitution, *see Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), its implications here are the same. In either case, the rule reflects a policy consistent with and complementary to the general policy of openness of public records established by the Act.

■ Hence, the rule creates a presumption that all court records are to be open; it allows a court to limit access in only one instance and for only one purpose (when the parties' right of privacy outweighs the public's right to know); and it grants to every member of the public the right to contest the legitimacy of any limited access order.

Interpreting the provisions of a court rule substantially identical to C.R.C.P. 121 § 1–5, the Georgia Supreme Court has stated: "The aim of this presumption [of openness] is to ensure that the public will continue to enjoy its traditional right of access to judicial records, except in cases of clear necessity." *Atlanta Journal v. Long,* 258 Ga. 410, 413, 369 S.E.2d 755, 758 (1988). We agree with this view and, thus, conclude that C.R.C.P. 121 § 1–5 squarely places the burden upon the party seeking to limit access to a court file to overcome this presumption in favor of public accessibility by demonstrating that the harm to the privacy of a person in interest outweighs the public interest in the openness of court files.

## I.

We first address, and reject, Lewis' contention that the court's limited access order was proper because, as the court found, it encouraged settlement of the parties' claims without a trial, and the parties acted in reliance thereon.

■ In addressing the motion to limit access pursuant to C.R.C.P. 121 § 1–5, the only

criterion the court could properly consider was whether the parties' privacy rights outweighed the public interest in the subject matter. Since that is the sole standard stated in the rule, we must assume that the supreme court, in promulgating C.R.C.P. 121 § 1–5, took into account other non-privacy considerations and determined that such were not of sufficient moment to justify limiting the public's access to the court's public records. *See Atlanta Journal v. Long, supra.* Thus, the court's consideration of factors other than harm to the privacy of the parties, including policy consideration with respect to settlement, or whether the parties relied on such an order, was improper and could not, as a matter of law, provide the basis for the limited access order.

Indeed, even under a court's exercise of its inherent authority, such factors have been held insufficient to overcome the presumption in favor of public disclosure. *See Bank of America National Trust & Savings v. Hotel‑Rittenhouse,* 800 F.2d 339, 346 (3rd Cir.1986) ("Even if we were to assume that some settlements would not be effectuated if their confidentiality was not assured, the generalized interest in encouraging settlements does not rise to the level of interests that we have recognized may outweigh the public's common law right of access."); *Daines v. Harrison,* 838 F.Supp. 1406 (D.Colo.1993) (parties' reliance on confidentiality order insufficient to warrant limited access order); *In re Estates of Zimmer,* 151 Wis.2d 122, 442 N.W.2d 578 (1989) (possibility that parties may void settlement agreement if record is unsealed does not outweigh public's right to inspect public documents).

## II.

In spite of the presumption in favor of open public records, Lewis argues, and the district court found, that the privacy interests of the parties here outweighed the public interest. Specifically, he asserts that the parties to the cases had a "legitimate expectation of privacy" in the contents of all of the court files. We disagree.

■ In view of the fact that court files are public records subject to the stated policy and disclosure provisions of the supreme court rule, it is unreasonable, as a matter of law, for the parties to litigation to expect or to assume that all of the court files will remain private. *See Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975) (no constitutional right of privacy in court files); Restatement (Second) of Torts § 652D, special note and comment b (1977) (no common law right of privacy in court files).

■ Further, the fact that the parties may claim that a court file contains extremely personal, private, and confidential matters is generally insufficient to constitute a privacy interest warranting the sealing of that entire file pursuant to C.R.C.P. 121 § 1–5. *In re Marriage of Purcell,* 879 P.2d 468 (Colo.App. 1994) (upholding district court's refusal to seal dissolution of marriage file containing the parties' financial affidavits and separation agreement).

■ Generally, under the common law, a heightened expectation of privacy or confidentiality in court records has been found to exist only in those limited instances in which an accusation of sexual assault has been made, or in which trade secrets, potentially defamatory material, or threats to national security may be implicated. *See Daines v. Harrison, supra; H.S. Gere & Sons, Inc. v. Frey,* 400 Mass. 326, 509 N.E.2d 271 (1987). While such instances may not furnish the exclusive bases for a limited access order, no claim has been made that any similar factor is present here.

■ Likewise, prospective injury to reputation, an inherent risk in almost every civil lawsuit, is generally insufficient to overcome the strong presumption in favor of public access to court records. *Brown & Williamson Tobacco Corp. v. F.T.C.,* 710 F.2d 1165 (6th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984).

■ Here, Lewis has failed to demonstrate how any possible harm to his reputation differs in this case from the possible harm that might be suffered by any other professional sued for malpractice. *See State v. Cottman Transmission,* 75 Md.App. 647, 542 A.2d 859 (1988). There has, in any case,

been no showing made as to how the possibility of such harm outweighs the public interest in any of the judicial records pertaining to the claim asserted.

On the contrary, because Lewis is a licensed health care professional, a charge that he has engaged in unprofessional conduct implicates the public interest and involves more than a private dispute between individuals. If the charge is proven accurate, the public should have access to that information; if the charge if unfounded, the public should be made aware of that fact, as well. Indeed, in such a case, the public may have an interest in a settlement agreement that they would not have in the typical private agreement.

Hence, we conclude, as a matter of law, that, given the nature of the controversy here, a closure of all of the court files could not properly be justified by a finding that the privacy interest of any party outweighed the public's interest in those files. The court erred, therefore, in entering the type of limited access order employed here and in denying to Martinez and to the public access to all of the documents filed with the court.

### III.

In reaching the conclusion that a broad limited access order denying access to all parts of the court files was not warranted here, we do not mean to suggest that a less restrictive order, limiting access to certain, selected documents within the record, might not be justified. We do hold, however, that a court cannot enter a limited access order based solely upon an agreement between the parties to the litigation; if the evidence does not support the required finding under C.R.C.P. 121 § 1–5.2, no such order may be entered. *See Brown & Williamson Tobacco Corp. v. Federal Trade Commission, supra.*

Lewis has suggested that there are several portions of the present record that would justify some limitation upon public access, even if the broad order that is the subject of our review is an improper limitation.

He asserts, for example, that one part of the court files discloses privileged communications between counsel and client. The fil-

ing of such a document with the court could be considered, in and of itself, to constitute a waiver of such privilege. We leave that question for resolution by the district court on remand. However, if we assume that filing does not constitute such a waiver, we would agree that a limited access order with respect to that single document might be justified.

Likewise, if the court has previously entered a protective order under C.R.C.P. 26(c), sealing materials produced in the discovery phase of the case, such an order may be continued.

■ Finally, nothing within C.R.C.P. 121 § 1–5 prevents the parties to a lawsuit from entering into a settlement agreement pursuant to which they agree to keep the terms of such agreement confidential; they may even privately agree not to disclose voluntarily information gained during the course of preparation for trial. However, such private agreement cannot be used to prevent some other party from discovering information that a later court may determine to be discoverable under C.R.C.P. 26(b). *See Hock v. New York Life Insurance Co.,* 876 P.2d 1242 (Colo.1994) (court properly allowed Lewis to be cross-examined on some aspects of the case that is the subject of the limited access order here). And, if the parties elect to file a copy of such an agreement with the court, the burden will be upon them to demonstrate that C.R.C.P. 121 § 1–5 authorizes the court to restrict the public's access to it. *See In re Marriage of Purcell, supra.*

Under these circumstances, therefore, we shall remand the cause to the trial court to give it an opportunity to limit access to selected documents within the present record as may be warranted under the governing rule. In doing so, however, the court must make findings of fact, consonant with the requirements of C.R.C.P. 121 § 1–5, and must specify at least the general nature of any privacy interest that its order is designed to protect.

The present limited access order is vacated, and the cause is remanded to the trial court, provided, however, that the present order shall remain in effect for a period of

sixty calendar days following the issuance of the mandate of this court, during which time the trial court may, upon notice, reconsider whether an amended limited access order of the nature described in this opinion is appropriate.

HUME and JONES, JJ., concur.