Henry J. KRIER, Plaintiff-Appellant,

v.

EOG ENVIRONMENTAL, INC., EOG Disposal, Inc.,
Vil-Kri Investments, LLC and Michael C. Vilione,
Defendants-Respondents.

Court of Appeals

*No. 2004AP2670. Submitted on briefs October 4, 2005.
—Decided November 22, 2005.*

2005 WI App 256

(Also reported in 707 N.W.2d 915.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Benjamin J. Harris* and *Paul A. Piaskoski,* of counsel, of *Harris & Associates, S.C.,* Milwaukee.

On behalf of the defendants-respondents EOG Environmental, Inc. and Michael C. Vilione, the cause was submitted on the brief of *Robert L. Elliott* of *Law Offices of Robert L. Elliott*, Milwaukee.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. WEDEMEYER, P.J.  Henry J. Krier appeals from an order granting EOG Environmental, Inc., EOG Disposal, Inc., Vil-Kri Investments, LLC and Michael C. Vilione's request to continue to seal a court record until further order of the court. In substance, he claims the trial court erroneously exercised its discretion by ordering continued record closure. We agree that the trial court failed to properly exercise its discretion and we remand with directions.

## BACKGROUND

¶ 2.  Prior to the commencement of this action, Krier and Vilione were long-time co-owners of EOG Environmental, Inc., EOG Disposal, Inc. and Vil-Kri Investments, LLC (collectively EOG). A dispute arose concerning the management of the business. On January 3, 2003, Krier filed this action against Vilione together with a motion for a temporary restraining order, preliminary injunction and appointment of a receiver. In support of the motions, Krier filed affidavits and other material containing confidential financial information relating to the parties and the business. On January 6, 2003, Vilione filed his own motion for a temporary injunction, which also included additional confidential financial information relating to the business.

¶ 3.  On January 7, 2003, the dispute between the parties went to mediation. On January 8, 2003, both parties requested that the court:  (1) seal the record

until further order of the court; (2) continue the temporary restraining order (which had been granted earlier); and (3) adjourn the hearing on all motions filed until further order of the court. On January 13, 2003, upon making findings of fact and conclusions of law, the court granted all of the requests. The order for closure of the records was based upon the court's broad inherent power to insure the proper administration of the courts.

¶ 4. As a result of mediation, Krier and Vilione settled their dispute as reflected by documents entitled Settlement Agreement and Mutual Release of All Claims dated January 31, 2003. By the terms of the documents, all parties were released from any liability except the accountant for the parties, who happened to be the brother of Vilione.[1] As part of the Settlement Agreement, the parties agreed not to disclose "the matters concerning the commencement of the Lawsuit, the particulars and/or the contents of the Complaint and Affidavits in said Lawsuit . . . ."

¶ 5. Subsequently, on February 24, 2003, Vilione filed a motion to formally dismiss the action and requested return of the sealed materials that were the subject of the court's findings of fact and conclusions of law dated January 13, 2003. However, on the date of the hearing, February 28, 2003, Vilione orally amended his motion, requesting that the subject materials be sealed instead of being returned to counsel. More particularly, and as germane to this appeal, Vilione first requested that the material filed by Krier "be sealed . . . for a period of 18 months . . . until August 28th, 2004, and

---

[1] The record reflects that Krier seriously considered filing suit against the accountant for his actions with regard to his complicity in facilitating the fraud and failure to disclose the misappropriations.

thereafter be unsealed or available in the court's file as with the other materials." Krier took no position on this request and it was granted. Vilione next requested, by oral amendment, that the material he filed be "sealed [for a period of 18 months] until August 28th, 2004, and then returned to the court file." Over Krier's objection, the court ordered the materials "remain sealed in this matter and not available for public inspection, until August 28, 2004 or further order of the Court."

¶ 6.  In June, prior to the expiration date of the nondisclosure order (August 28, 2004), Vilione moved to extend the date of the record seal. Both parties submitted affidavits and memoranda in support of their respective positions, which shall be examined later in this opinion. After hearing oral argument, the trial court granted Vilione's motion, ruling that the "materials" would remain sealed in this manner and would not be available for public inspection until further order of the court. Krier now appeals that order.

## ANALYSIS

¶ 7.  Krier claims the trial court erred in continuing its order of nondisclosure of the record because the record does not present reasons sufficient to constitute an exception to the public policy of access to public records set forth in WIS. STAT. § 59.20(3)(a) (2003–04).[2] For reasons to be stated, we agree.

¶ 8.  As relevant to this appeal, WIS. STAT. § 59.20(3)(a) reads:  "[the] clerk of the circuit court . . . shall open to the examination of any person all . . . papers required to be kept in his or her office and

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

permit any person so examining to take notes and copies of such . . . records, papers or minutes therefrom . . . ."

¶ 9.   In the seminal case, *State ex rel. Bilder v. Township of Delavan*, 112 Wis. 2d 539, 334 N.W.2d 252 (1983), our supreme court explicated the scope of the public policy expressed in the statute:   "a person requesting to examine documents under sec. 59.14 [renumbered sec. 59.20 as of 1995] has an absolute right of examination . . . ." *State ex rel. Bilder*, 112 Wis. 2d at 554. Stated otherwise, disclosure is not limited. At the same time, the court was quick to recognize "that the 'absolute right' rule is not without exception[s]." *Id.* The first exception "allows for closing documents to public examination when there is a statute authorizing the sealing of otherwise public records." *Id.* The second exception "is that disclosure must yield if it infringes on a constitutional right." *Id.* at 555. A third exception comes into play if court records are the subject of inquiry. This exception states that a trial court under "its inherent power to preserve and protect the exercise of its judicial function of presiding over the conduct of judicial proceedings has the power to limit public access to judicial records when the administration of justice requires it." *Id.* at 556.

¶ 10.   To further amplify the policy contained in the statute, as it relates to court records, *Estates of Zimmer v. Mewis*, 151 Wis. 2d 122, 134–35, 442 N.W.2d 578 (Ct. App. 1989), we adopted the rationale set forth in *Bank of Am. Nat'l Trust v. Hotel Rittenhouse*, 800 F.2d 339, 344–46 (3d Cir. 1986). We concluded "that the parties' agreement to keep the terms of a settlement confidential could not overcome the presumption" of

629

access to public record. *Zimmer*, 151 Wis. 2d at 134. In so concluding, we adopted the following reasoning:

> We acknowledge the strong public interest in encouraging settlement of private litigation. Settlements save the parties the substantial cost of litigation and conserve the limited resources of the judiciary.
>
> . . . .
>
> Once a settlement is filed in the district court, it becomes a judicial record, and subject to the access accorded such records.
>
> Such public access serves several . . . important interests . . . . First, it promotes "informed discussion of governmental affairs by providing the public with [a] more complete understanding of the judicial system" and the "public perception of fairness which can be achieved only by permitting full public view of the proceedings." Disclosure of settlement documents serves as a check on the integrity of the judicial process.
>
> . . . .
>
> Even if we were to assume that some settlements would not be effectuated if their confidentiality was not assured, the generalized interest in encouraging settlements does not rise to the levels of interests that . . . may outweigh the public's . . . right of access.

*Id.* (quoting *Bank of Am.*, 800 F.2d at 344–46) (bracketing in original). When the trial court, in its original order of January 13, 2003, its first continuing order of March 17, 2003, and its second continuing order of August 16, 2004, decided to seal the record (and subject it to the calls of Wis. Stat. § 59.20(3)), it became the custodian of the record. Only the most recent order for closure is the subject of this appeal. Whether the trial court properly exercised its discretion in its disposition

630

of Vilione's last motion is a question of law, which we review independently. *Bilder*, 112 Wis. 2d at 557.

¶ 11. In addressing the merits of this challenge to the trial court's order for closure of the record, it is helpful to examine the procedural circumstances that preceded the granting of the order. The first order to seal on January 13, 2003, was mutually agreed upon by the parties and occurred during negotiations to settle the dispute. There is no transcript reflecting how the trial court arrived at its decision to seal. It was advanced and based upon the court's general supervisory power to ensure the proper administration of justice.

¶ 12. Subsequently, on February 28, 2003, upon the motion of Vilione, the order of closure was extended (over Krier's objection) to August 28, 2004, or until further order of the court. In granting the order, the court, without further explication, relied upon the same rationale it used to support the January 13, 2003 order. No testimony was taken at the hearing.

¶ 13. On July 26, 2004, the trial court heard argument and considered submissions on the motion to extend the closure beyond August 28, 2004. The submission made by Vilione was an affidavit from his counsel. Counsel's affidavit requests "only that the Court retain the seal of these records for reasons of the adverse consequences to Mr. Vilione and his business, at least until there is a request to unseal the records."

¶ 14. As additional support for granting the motion for extension, Vilione's counsel asserts that a material consideration for the settlement of the dispute was an agreement to seal the record. Should the records become unsealed, rescission of the settlement agreement is a possibility.

¶ 15. In response to the motion, Krier essentially averred that "[o]wnership and operation of the compa-

nies have changed substantially since 2002, and the financial information in the sealed materials will be 20 months old as of August 28, 2004, and is now stale and of no use or value to the companies or their competitors in today's marketplace."

¶ 16. The trial court ruled in favor of Vilione. In rendering its oral decision, the trial court stated several reasons to support its conclusion to grant additional closure: (1) there is a settlement agreement in place that includes an agreement between the parties to keep the information in the file confidential; (2) a prior judge had the opportunity to review all these issues, made findings as to the sensitive nature of the information, and made a decision to seal; (3) sealing the records does not impede the ability of Krier to bring an action as it was contemplated in the settlement agreement against the accountant of the companies; and (4) there is no request on behalf of the public claiming this is information that has some indicia of public concern.

¶ 17. In reviewing the basis for the trial court's order, for the purposes of analysis, we shall divide its rationale into two parts—reliance upon the two previous orders of the same nature, and the other reasons stated to reach its conclusion.

¶ 18. As stated earlier in this decision, the initial and continuing rationale for the order of closure was invoking the inherent authority of the court, i.e., the third exception to the presumption of disclosure in the statute. In *Bilder*, 112 Wis. 2d at 556–57, the supreme court declared: "To overcome the legislatively mandated policy favoring open records and to persuade the circuit court to exercise its inherent authority, the party seeking to close court records bears the burden of demonstrating, with particularity, that the administration of justice requires that the court records be closed."

632

¶ 19. Doubtless, here the trial court relied upon the previous court's record. But that reliance does not end the analysis. From our review of the entire record, we can find no evidence that the necessary element of "particularity" was ever advanced other than in the generality. It is undisputed that no appeal was ever taken from the order emanating from the January 13, 2003 findings, nor from the March 17, 2003 order. Regardless, as demonstrated above in the most recent motion, Vilione, by his counsel's affidavit, proffered no demonstration of "particularity" as to the adverse impact disclosure would produce. Contrariwise, Krier, by affidavit, averred that the financial information that apparently the trial court relied upon in its first order of closure was no longer relevant. It was no longer necessary to seal that information because the circumstances of the business were different compared to the time of the original order for closure. The business had been divided between the parties pursuant to the settlement.

¶ 20. Vilione concedes that he would have a heavy burden to overcome the presumption of disclosure should a motion be filed for such a purpose. But, he argues Krier has made no such motion; rather, he contends that Krier only opposed the extension of closure and allowed the August 28, 2004 deadline to lapse. We reject this reasoning. Vilione cuts too fine a line. Although Kier has not used the magical words of moving for "disclosure," or "to unseal," we deem the substance of his briefing and oral argument as the functional equivalent of such a motion. Thus, Vilione is required to meet the burden imposed by our relevant case law.

¶ 21. We now address the other reasons stated by the trial court to support the extended order of closure.

The trial court observed, and correctly so, that there existed a confidentiality agreement to not disclose the materials contained in the court file. Vilione, in effect, argued that the existence of this agreement insulates the material from public disclosure. We are not persuaded. Although an agreement of confidentiality may be enforced as between the parties, we hasten to emphasize, as we decided in *Zimmer, once the documents are filed in the court,* they become a judicial record, subject to the access accorded such records. This factor trumps any suggestion about the applicability of judicial estoppel. Even the possibility that the parties may attempt to rescind the settlement agreement if the record is unsealed, does not outweigh the public's right to inspect public documents. *Zimmer,* 151 Wis. 2d at 133.

¶ 22.   A second reason stated by the trial court was the absence of a request on behalf of the public for the information and that the information had no indicia of public concern. A reasonable reading of WIS. STAT. § 59.20(3) reflects two obvious facts. There are no restrictions in the statute as to who may request access to the court records, or what may be requested. The key phrase of entitlement is "any person." *Id.* The language of the statute has a broad sweep. There are no specifications requiring a showing of harm to the public or that the inquiry must have indicia of public concern. Nor is the nature of the motive for acquiring access to the court records a qualifying consideration. Thus, a claim of lack of standing has no basis.

¶ 23.   When examining the contours of the open records presumption and particularly as it applies to court records and the court's control over those records,

there is a strong presumption favoring access, which may be overcome only by a showing of an overriding public interest in closure. *Zimmer*, 151 Wis. 2d at 134. To implement this presumption our courts must " 'balance the factors favoring secrecy against the . . . presumption of access.' " *Id.* (citation omitted). To engage in this balancing process is an exercise of discretion by the trial court. An erroneous exercise of discretion occurs if the court fails to exercise its discretion, the record demonstrates that the facts do not support the trial court's decision, or the trial court applied the wrong legal standards. *Oostburg State Bank v. United Sav. & Loan Ass'n*, 130 Wis. 2d 4, 11–12, 386 N.W.2d 53 (1986).

¶ 24.   Here, it is evident that the trial court recognized its obligation to balance the factors favoring secrecy against the presumption of access. This balancing exercise is a commingling of fact-finding and applying appropriate factors. In our opinion, we have indicated what factors are not appropriate for application and who has the burdening oar of proof. We have also set forth decisions of this court and our supreme court giving guidance for the purpose of application. This court does not fulfill a fact-finding function. *See Wurtz v. Fleischman*, 97 Wis. 2d 100, 107 n.3, 293 N.W.2d 155 (1980). Moreover, we should not here exercise the trial court's discretion. *See Barrera v. State*, 99 Wis. 2d 269, 282, 298 N.W.2d 820 (1980).

¶ 25.   Because we are unable to ascertain from the record how the trial court examined the record of its predecessor court, how it examined the issue of "particularity" in terms of the burden of proof, and which proper factors, if any, it applied, we conclude that discretion was not exercised. Accordingly, we retain

jurisdiction of this appeal, and remand the matter to the trial court, with directions to reconsider the standards set forth in *Zimmer* and *Bilder*, and apply those standards to the facts of the instant case. The trial court is directed to conduct any additional proceedings necessary to complete the directives provided in this opinion within ninety days of remittitur. If the trial court is unable to comply with this deadline, that fact should be communicated to us, along with a proposed alternate date for filing the necessary findings and transcript. After the necessary further proceedings have been conducted, and the trial court has made findings and rendered conclusions, the case shall be returned to this court for completion of the appeal.

*By the Court.*—Cause remanded with directions.