COURT OF APPEALS
DECISION
DATED AND FILED

January 22, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP974**

Cir. Ct. No. 2019FA672

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

IN RE THE MARRIAGE OF:

MICHAEL DUANE RUST,

    JOINT-PETITIONER-APPELLANT,

  V.

ANGELA MARIE RUST,

    JOINT-PETITIONER-RESPONDENT.

---

        APPEAL from orders of the circuit court for Winnebago County: GUY D. DUTCHER, Judge. *Order reversed and cause remanded; order affirmed.*

        Before Neubauer, Grogan and Lazar, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  Michael Duane Rust appeals post-divorce orders modifying child support and unsealing the case record.  We conclude the circuit court erroneously exercised its discretion when it ordered child support in an amount less than the amount called for by the percentage standard and ordered that the amount be paid into educational investment accounts ("529 Accounts") for the children.  We also conclude the court appropriately exercised its discretion by ordering the case and corresponding court records unsealed with redactions.  Accordingly, we reverse the child support order and remand for further proceedings consistent with this opinion.  We affirm the order unsealing the case.

## BACKGROUND

¶2      Michael Rust and Angela Rust were granted a judgment of divorce in 2020.[1]  They have three minor children.  The issues of custody, placement, child support and maintenance were resolved by a marital settlement agreement ("MSA") adopted as part of the judgment.

¶3      Under the MSA, Angela was to pay to Michael approximately $88 in child support.  That amount was calculated by offsetting the amount of child support due to Michael using the high-income and shared placement guidelines (about $420) by Michael's estimated portion of the costly health insurance being provided by Angela for the benefit of the children.  Other provisions of the MSA

---

[1] For ease of reading, we refer to the parties by their first names, as is customary in divorce cases where the parties share surnames.  Michael has subsequently been elected as a Winnebago County circuit court judge, and we intend no disrespect to his office by the use of his given name in this opinion.  Likewise, Angela is a licensed attorney, and we intend no disrespect to her as a legal professional.  Angela proceeds *pro se* in this court.

granted Michael limited-term maintenance payments of $699 per month from Angela.

¶4      In 2022, Michael filed a motion to seal the case record based upon his then-recent hiring as a Winnebago County court commissioner. Michael also sought to modify placement and child support. The case was transferred to the Hon. Guy D. Dutcher in Waushara County based upon the disqualification of all Winnebago County judges, though the transfer occurred after a Winnebago County judge had signed an order sealing the matter. Following the transfer, Angela moved to terminate or reduce the amount of maintenance and to unseal the case with appropriate redactions.

¶5      The circuit court held a non-evidentiary hearing on the motions, after which it entered an order granting Michael's motion to modify child support.[2] Based upon the parties' filings, the court observed that Michael was making slightly less than he was at the time of divorce, but now had access to employer-offered healthcare for the children that cost considerably less than the coverage Angela was able to obtain. Angela had been hired as an attorney at a law firm, and her income had increased.

¶6      The circuit court acknowledged that an adjustment to child support was necessary based on the parties' changed financial circumstances. Using the high-income and shared placement formulas, the court concluded Michael would be entitled to $870 in monthly child support, with an additional $81 owed by

---

[2] The other portions of the order are not at issue in this appeal.

Angela for a portion of the family insurance premium now that Michael was obtaining coverage under his employment.

¶7      The circuit court stated that Michael did not need the child support payments, and it reduced the calculated amount to $500, stating it believed that ordering "about half of what [Angela] would otherwise owe" was "fair, considering the maintenance order that is made."  In lieu of making that payment to Michael, the court ordered that Angela place that money in "either Edvest or an equivalent 529 account in the name of each of the three children," in set amounts based upon the age of the child.  The amount increased upon termination of maintenance to $800 per month in child support, with designated percentages of that amount to be placed in trust for each child.  The court denied Angela's motion to modify maintenance.

¶8      Michael filed a letter in response to a proposed order to unseal the case, objecting to unsealing and asserting the circuit court had erred by not taking any evidence during the hearing.  The court subsequently entered an order unsealing the case but ordering the parties' addresses maintained under seal and redacted on previously filed documents.  Michael now appeals.

## DISCUSSION

¶9      On appeal, Michael argues the circuit court erroneously exercised its discretion in three ways.  First, he argues the court erred by ordering a downward deviation from the percentage standard for child support without adequately explaining its reasoning and without a sufficient evidentiary foundation.  Second, he argues the court erred by ordering that the amounts payable as child support be directed into the children's 529 Accounts.  Third, he asserts the court erroneously

4

exercised its discretion when it ordered that the record from the divorce proceedings be unsealed with redactions.

¶10     We review each of these issues using the erroneous exercise of discretion standard.  *See LeMere v. LeMere*, 2003 WI 67, ¶13, 262 Wis. 2d 426, 663 N.W.2d 789 (calculation of child support); *Winkler v. Winkler*, 2005 WI App 100, ¶31, 282 Wis. 2d 746, 699 N.W.2d 652 (imposition of trust on child support proceeds); *Krier v. EOG Env't, Inc.*, 2005 WI App 256, ¶23, 288 Wis. 2d 623, 707 N.W.2d 915 (sealing of a circuit court record).  We will uphold a discretionary decision as long as the circuit court examined the relevant facts, applied the proper standard of law, and used a demonstrated rational process to reach a conclusion that a reasonable judge could reach.  *LeMere*, 262 Wis. 2d 426, ¶13.

> I.     *The circuit court erroneously exercised its discretion when ordering child support at less than the guideline amount established by the percentage standard.*

¶11     It is undisputed that the use of the percentage standard would have required that Angela pay monthly child support to Michael in the amount of $870.[3] A court is generally required to use the percentage standard to calculate child support unless it determines by the greater weight of the credible evidence that, after considering the factors set forth in WIS. STAT. § 767.511(1m), the use of the percentage standard is unfair to the child or to any of the parties.  WIS. STAT. § 767.59(2)(a), (b).  Section 767.511(1m), in turn, identifies sixteen considerations

---

[3] The parties also have not disputed that a substantial change in circumstances warranted revisiting the ordered amount of child support.  *See* WIS. STAT. § 767.59(1f) (2021-22).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

that are relevant to the decision to deviate from the percentage standard, including the parents' financial resources, the amount of maintenance awarded, and the children's educational needs.

¶12    We agree with Michael that the circuit court here did not adequately explain its rationale for its decision to make a $370-per-month downward adjustment to the amount of child support calculated under the percentage standard.  The only basis the court offered was its articulation that "a little less than" "half of what [Angela] would otherwise owe" was "fair, considering the maintenance order that is made."

¶13    It is well-established that the mere use of "fairness" verbiage is insufficient to establish a proper exercise of discretion; a more robust legal analysis is required.  *Hubert v. Hubert*, 159 Wis. 2d 803, 814, 465 N.W.2d 252 (Ct. App. 1990).    The court's on-the-record exercise of discretion must demonstrate that it balanced the children's welfare against any perceived unfairness to either party.  *Id.* at 815.  Here, there was no explanation of how a reduced amount of child support might affect the children.

¶14    The circuit court appeared to regard the percentage-standard child support as unnecessary in light of Michael's income, remarking several times that Michael did not "need" the child support.  Other times, the court referred to Angela's new employment as a "windfall" for Michael—a characterization with which Michael disagreed, reminding the court that any increase in child support was to benefit the children.

¶15    Ultimately, though, there was no evidentiary basis to label the percentage-standard child support unnecessary or excessive.  The parties at the hearing were not sworn in, and no evidence was taken.  As a result, it is unclear

6

whether or how the circuit court "determined … by the greater weight of the credible evidence" that the use of the percentage standard was unfair to Angela.[4] *See* WIS. STAT. § 767.59(2)(b).

¶16     The circuit court appeared to believe the previous amount of child support was de minimis, going so far as to remark that under the MSA, Angela was "for all intents and purposes," not paying child support.  These comments demonstrate an incomplete understanding of the record.  The parties' MSA recognized that Angela owed child support in excess of $400 per month, which was offset by Michael's share of the costly insurance Angela was then obtaining for the children.  In that sense, the ordered $500 in monthly child support payments represents almost no change from the amount designated by the parties' MSA, despite the substantial change in circumstances that occurred post-divorce.

¶17     The circuit court indicated that its refusal to alter the ordered amount of maintenance in some manner affected its child support decision.[5]  While the amount of maintenance is an appropriate factor to consider when deviating from

---

[4] Angela suggests the circuit court's consideration of the parties' financial resources was informed by sworn affidavits filed by the parties and by the record in the divorce proceedings. While affidavits may have been sufficient to demonstrate the parties' respective incomes for use when calculating the percentage standard, we are less convinced that the question of whether and how much to deviate from the percentage standard is amenable to decision by affidavit—particularly here, where the affidavits focused on the parties' disputes and finances and contained comparatively little information about the children.  Moreover, Angela does not explain how dated financial information filed prior to the divorce could have any relevance to the court's decision to deviate from the percentage standard based upon a substantial change in circumstances in post-divorce proceedings.  To the extent she argues the property division or receipt of post-judgment amounts payable under that property division were significant to the court's decision, its explanation does not reflect that.

[5] We note that at other points in the discussion, the circuit court intimated that it intended to adjust the amount of maintenance Angela owed Michael, though it ultimately did not make any changes.

the percentage standard, *see* WIS. STAT. § 767.511(1m)(bj), a court must still articulate the basis for its decision to deviate from the guideline amount, ***Evenson v. Evenson***, 228 Wis. 2d 676, 688, 598 N.W.2d 232 (Ct. App. 1999). Here, the court did not identify what an appropriate amount of maintenance otherwise would have been or how continuing maintenance at the agreed-upon level rendered application of the percentage standard unfair.[6]

¶18 Perhaps recognizing the shortcoming in the circuit court's explanation, Angela looks to this court to shore up the court's rationale. It is true that we generally look for reasons to sustain a circuit court's exercise of discretion, *see **Gerrits v. Gerrits***, 167 Wis. 2d 429, 441, 482 N.W.2d 134 (Ct. App. 1992), but that is merely a function of this court's role as an error-correcting court, *see **Blum v. 1st Auto & Cas. Ins. Co.***, 2010 WI 78, ¶50, 326 Wis. 2d 729, 786 N.W.2d 78. In this case, we are unpersuaded that the circuit court considered the relevant facts and adequately demonstrated its exercise of discretion. An independent review of the Record in this case is more akin to exercising the court's discretion ourselves, which is impermissible. *See **Schultz v. Darlington Mut. Ins. Co.***, 181 Wis. 2d 646, 656-57, 511 N.W.2d 879 (1994) ("Thus, our inquiry focuses on whether the circuit court made a reasoned determination. The question is not whether this court would have taken the same action as an original matter.").

---

[6] Additionally, the circuit court discussed some tax consequences (or lack thereof) with the parties as an aspect of its decision to order the amounts payable as child support be deposited into educational investment accounts. On appeal, Angela concedes the court's statements in this regard "do not appear to be entirely accurate."

II.     *The circuit court erroneously exercised its discretion when it ordered that all money payable as child support be deposited into the 529 Accounts.*

¶19     Michael next argues the circuit court erred by ordering that the entire amount of child support be paid into the children's 529 Accounts.  We assume without deciding that the court had authority to divert the child support funds into a trust.[7]  Nonetheless, its explanation for doing so in this case was insufficient and was not premised on a developed factual record.

¶20     "The authority of the [circuit] court to impose a trust on child support is limited."  **Winkler**, 282 Wis. 2d 746, ¶30.  Before ordering the child support money placed in a trust, the court must conclude that a trust is in the child's best interests.  **Id.**, ¶31.  This requires the court to find that the recipient parent is incapable or unwilling to wisely manage the child support money.  **Id.**  The circuit court here made the opposite finding.  It told Michael that it had "far more confidence in how that money is going to be spent in your hands than I do most of the time."

¶21     Angela suggests a finding that the recipient parent is a spendthrift is necessary only when the recipient does not consent to the placement of funds in trust.  *See **Lyman v. Lyman**, 2011 WI App 24, ¶25, 331 Wis. 2d 650, 795 N.W.2d

---

[7] At the hearing, Michael agreed that the circuit court could direct a portion of the child support into educational investment accounts, but he objected to the entire amount being paid into the 529 Accounts.  WISCONSIN STAT. § 767.511(2) states that a court may "protect and promote the best interests of the minor children by setting aside a *portion* of the child support … in a separate fund or trust for the support, education and welfare of such children."  (Emphasis added.)  Michael contends the statutory language precludes a circuit court from ordering the *entire* amount be placed in an educational account.  We need not reach this issue because we reverse on other grounds.  *See **Patrick Fur Farm, Inc. v. United Vaccines, Inc.**, 2005 WI App 190, ¶8 n.1, 286 Wis. 2d 774 (recognizing the court of appeals should decide cases on the narrowest possible grounds).

475. She argues that Michael's comments indicate his willingness to have the child support payments fund the 529 Accounts.

¶22 Although the transcript is clear that Michael was willing to have a portion of the child support payments directed to the 529 Accounts, his comments do not support the circuit court's decision to divert *all* of the payments there. The notion that Michael consented to funding the 529 Accounts in lieu of receiving child support—such that he forfeited his right to appeal that issue—is belied by the transcript, wherein Michael alerted the court that the proposed plan would "have a significant impact on the disposable income in my household to provide for the children right now." Michael added, "there are many things that I do with the children that the children have become accustomed to that I've been utilizing those funds for," prompting Angela to remark that she believed some of those expenditures (such as for parties and travel) were frivolous.

¶23 There are other problems with the circuit court's rationale in diverting the funds. Again, the evidentiary foundation for the court's remarks that Michael did not need money for child support is unclear. The court also assumed that the parties had not made any other arrangements for their children's higher education, remarking: "I doubt right now, after you've both gone through a divorce, that there probably is anything in place."

¶24 The circuit court erroneously exercised its discretion by failing to articulate the basis for its discretion to divert all amounts owed as child support into the 529 Accounts. We reverse the child support order and remand for further proceedings consistent with this opinion.

*III. The circuit court properly ordered the record of the divorce proceedings unsealed with redactions.*

¶25 Michael argues that, as a matter of judicial comity, the circuit court was unable to overrule the prior judge that had ordered the matter sealed. Angela responds that the order sealing the case was void from the beginning. We conclude that even if the prior order was valid, the court had the authority to revisit that ruling and enter a subsequent order unsealing the case with conditions.

¶26 The order sealing the case was entered on an ex parte basis and occurred immediately before the case was transferred to another judge. The circuit court here was therefore acting as a successor to the original decision maker and not in an appellate capacity. Under these circumstances, the successor judge had the authority to revisit the issue. "An order made out of court without notice may be vacated or modified without notice by the judge who made it." WIS. STAT. § 807.03; *see also **Starke v. Village of Pewaukee***, 85 Wis. 2d 272, 283, 270 N.W.2d 219 (1978) ("[A] successor judge may in the exercise of due care modify or reverse … rulings of his predecessor if this does not require a weighing of testimony … and so long as the predecessor would have been empowered to make such modifications.").

¶27 Moreover, the circuit court's order did not ignore the reason that Michael sought to have the case sealed in the first instance. The court recognized that as a judicial officer, Michael's address should not be publicly available. The court appropriately balanced the competing considerations of judicial security with the presumption of open proceedings to fashion a narrower remedy than sealing the entire case. Accordingly, the order unsealing the case record is affirmed.

*By the Court.*—Order reversed and cause remanded; order affirmed.

11

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.