# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2020AP1032 |

| | |
|---|---|
| COMPLETE TITLE: | John Doe 1, Jane Doe 1, Jane Doe 3 and Jane Doe 4, |
| |         Plaintiffs-Appellants-Petitioners, |
| | John Doe 5 and Jane Doe 5, |
| |         Plaintiffs-Appellants, |
| | John Doe 6, Jane Doe 6, John Doe 8 and Jane Doe 8, |
| |         Plaintiffs, |
| |     v. |
| | Madison Metropolitan School District, |
| |         Defendant-Respondent, |
| | Gender Equity Association of James Madison Memorial High School, Gender Sexuality Alliance of Madison West High School and Gender Sexuality Alliance of Robert M. LaFollette High School, |
| |         Intervenors-Defendants-Respondents. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 399 Wis. 2d, 963 N.W.2d
PDC No:2021 WI App 60 - Published

| | |
|---|---|
| OPINION FILED: | July 8, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | May 24, 2022 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Dane |
|   JUDGE: | Frank D. Remington |

JUSTICES:
HAGEDORN, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, DALLET, and KAROFSKY, JJ., joined. ROGGENSACK, J., filed a dissenting opinion, in which ZIEGLER, C.J., and REBECCA GRASSL BRADLEY, J., joined.
NOT PARTICIPATING:

ATTORNEYS:

    For the plaintiffs-appellants-petitioners, there were briefs filed by *Richard M. Esenberg, Luke N. Berg, Anthony F.*

*LoCoco, Roger G. Brooks* and *Wisconsin Institute for Law & Liberty,* Milwaukee, and *Alliance Defending Freedom*, Scottsdale. There was an oral argument by *Luke N. Berg*.

For the defendant-respondent and interevenors-defendants-respondents, there was a brief filed by *Emily M. Feinstein, Adam R. Prinsen, Sarah A. Zylstra, Sarah J. Horner,* and *Quarles & Brady LLP*, Madison, and *Boardman & Clark LLP*, Madison. There was an oral argument for the defendant-respondent by *Sarah A. Zylstra* and an oral argument for the intervenors-defendants-respondents by *Adam R. Prinsen*

An amicus curiae brief was filed by *Frederick W. Claybrook, Jr., Matthew M. Fernholz*, and *Claybrook LLC*, Washington, D.C., and *Cramer, Multhauf & Hammes, LLP*, Waukesha for Wisconsin Family Action, Illinois Family Institute, Minnesota Family Council, Delaware Family Policy Council, Nebraska Family Alliance, Hawaii Family Forum, The Family Foundation, Minnesota-Wisconsin Baptist Convention, Ethics and Religious Liberty Commission of the Southern Baptist Convention, Concerned Women for America, Ethics & Public Policy Center, National Legal Foundation, and Pacific Justice Institute.

An amicus curiae brief was filed by *Tamara B. Packard* and *Pines Bach LLP*, Madison, for Madison Teachers Inc.

An amicus curiae brief was filed by *Eric G. Pearson, Morgan J. Tilleman, Megan C. Isom,* and *Foley & Lardner LLP*, Milwaukee for the American Academy of Child and Adolescent Psychiatry and the Wisconsin Council of Child and Adolescent Psychiatry.

An amicus curiae brief was filed by *Victoria L. Davis Dávila, Robert Theine Pledl, Shannon Minter, Asaf Orr,* and *Davis*

2

*& Pledl,* Milwaukee, and *National Center for Lesbian Rights*, San Francisco, for Professors of Psychology & Human Development.

An amicus curiae brief was filed by *Daniel R. Suhr* and *Liberty Justice Center*, Chicago, for the Liberty Justice Center.

**2022 WI 65**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2020AP1032
(L.C. No. 2020CV454)

STATE OF WISCONSIN             :           IN SUPREME COURT

**John Doe 1, Jane Doe 1, Jane Doe 3 and Jane Doe 4,**

      **Plaintiffs-Appellants-Petitioners,**

**John Doe 5 and Jane Doe 5,**

      **Plaintiffs-Appellants,**

**John Doe 6, Jane Doe 6, John Doe 8 and Jane Doe 8,**

      **Plaintiffs,**

    **v.**

**Madison Metropolitan School District,**

      **Defendant-Respondent,**

**Gender Equity Association of James Madison Memorial High School, Gender Sexuality Alliance of Madison West High School and Gender Sexuality Alliance of Robert M. LaFollette High School,**

      **Intervenors-Defendants-Respondents.**

**FILED**

**JUL 8, 2022**

Sheila T. Reiff
Clerk of Supreme Court

---

HAGEDORN, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, DALLET, and KAROFSKY, JJ., joined. ROGGENSACK, J., filed a dissenting opinion, in which ZIEGLER, C.J., and REBECCA GRASSL BRADLEY, J., joined.

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 BRIAN HAGEDORN, J. This case involves a constitutional challenge by parents to a school district policy. The substantive issues, however, remain pending before the circuit court and are not properly before us. This is an appeal contesting the circuit court's decision to seal and protect the parents' identities from the public and the school district, but not from the attorneys defending the school district's policy. Rather than follow our current law governing confidential litigation, the parents ask us to modify our approach in Wisconsin and adopt new standards modeled after federal law. We decline to do so. Applying Wisconsin law, we determine the circuit court did not erroneously exercise its discretion by requiring disclosure of the parents' identities to opposing attorneys, while allowing the parents to keep their names sealed and confidential as to the public and the district.

¶2 The parents further ask this court to issue an injunction against the underlying policy. But a preliminary injunction motion on this very issue remains pending in the circuit court, has not been decided, and therefore has not been appealed. We are not aware of any procedure by which we could properly address that motion in this court absent an extraordinary exercise of our superintending authority, which the petitioners did not request. What remains is an appeal of the circuit court's decision to grant in part and deny in part a temporary injunction pending appeal, a decision the court of

appeals affirmed. However, our decision today ends the appeal of the circuit court's decision regarding parent confidentiality. Therefore, any decision addressing the temporary injunction pending appeal is now moot. Accordingly, we do not opine on the merits of the parents' request for temporary injunctive relief. We affirm the court of appeals' decision and remand to the circuit court for further adjudication of the parents' claims.

## I. BACKGROUND

¶3 In April 2018, the Madison Metropolitan School District (the District) adopted a document entitled, "Guidance & Policies to Support Transgender, Non-binary & Gender Expansive Students" (the Policy). The Policy contains multiple provisions that animate the parents' claims in this case. We highlight several for context.

- "Students will be called by their affirmed name and pronouns regardless of parent/guardian permission to change their name and gender in [District] systems."

- "All [District] staff will refer to students by their affirmed names and pronouns. Staff will also maintain confidentiality and ensure privacy. Refusal to respect a student's name and pronouns is a violation of the [District] Non-discrimination policy."

- "School staff shall not disclose any information that may reveal a student's gender identity to others, including parents or guardians and other school staff, unless legally required to do so or unless the student has authorized such disclosure."

3

- "All staff correspondence and communication to families in regard to students shall reflect the name and gender documented in [the District system] unless the student has specifically given permission to do otherwise. (This might involve using the student's affirmed name and pronouns in the school setting and their legal name and pronouns with family)."

- "To avoid harmful misgendering or misnaming, teachers should ensure that all information shared with substitute teachers is updated and accurate. For example, make sure attendance rosters, shared include accurate student names and pronouns, keeping in mind that not all students have their affirmed names and genders updated in [the District system]."

¶4 In February 2020, a group of parents sued the District alleging the Policy violated their right to parent their children, citing Article I, Section 1 of the Wisconsin Constitution,[1] and their right to exercise their religious beliefs under Article I, Section 18 of the Wisconsin Constitution.[2] Contemporaneous with filing their complaint, the

---

[1] Article I, Section 1 of the Wisconsin Constitution provides: "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed."

[2] Article I, Section 18 of the Wisconsin Constitution states:

The right of every person to worship Almighty God according to the dictates of conscience shall never be infringed; nor shall any person be compelled to attend, erect or support any place of worship, or to maintain any ministry, without consent; nor shall any control of, or interference with, the rights of conscience be permitted, or any preference be given by law to any religious establishments or modes of worship; nor shall any money be drawn from the

parents moved to proceed using pseudonyms. The parents also sought a preliminary injunction pursuant to Wis. Stat. § 813.02 (2019-20).[3] They asked the circuit court[4] to prohibit the District from:

> (1) enabling children to socially transition to a different gender identity at school by selecting a new "affirmed named and pronouns," without parental notice or consent;

> (2) preventing teachers and other staff from communicating with parents that their child may be dealing with gender dysphoria, or that their child has or wants to change gender identity, without the child's consent; and

> (3) deceiving parents by using different names and pronouns around parents than at school.

¶5 The District moved to dismiss the complaint and asked the circuit court to postpone the hearing on the injunction until the court decided the motion to dismiss. The circuit court agreed. After hearing argument, the circuit court denied the motion to dismiss.[5]

---

> treasury for the benefit of religious societies, or religious or theological seminaries.

[3] All subsequent references to the Wisconsin Statutes are to the 2019-20 version unless otherwise indicated.

[4] The Honorable Frank D. Remington of the Dane County Circuit Court presided.

[5] The circuit court also granted intervention to the Gender Equity Association of James Madison Memorial High School, the Gender Sexuality Alliance of Madison West High School, and the Gender Sexuality Alliance of Robert M. La Follette High School.

We refer to the District and the Intervenors-Defendants collectively as the District.

¶6   The circuit court also granted in part the parents' motion to proceed anonymously.  The court agreed with the risks presented by the parents and found "sufficient need to keep the Plaintiffs' names sealed and confidential from the public."  The court concluded the parents made a "demonstrable factual showing that . . . would their names be disclosed, they would likely be subject to threats and intimidation, which would be wholly inappropriate and frustrate the orderly functioning of the court case."  It held, however, that the parents "must disclose their identities to the Court and attorneys for the litigants."  The circuit court ordered the parents to file, under seal, an amended complaint listing the names and addresses of the parents accessible to the court and opposing attorneys.  And it instructed the parents to circulate a draft protective order, the terms of which were to be negotiated.  The parents initially circulated a draft protective order which would limit the disclosure of their names to attorneys of record, excluding their staff and other attorneys at their firms.  However, the circuit court concluded this was too narrow and directed the preparation of a protective order that other attorneys at the respective law firms and their staff would sign as well.

¶7   The parents sought an interlocutory appeal challenging the order to disclose their identities to the attorneys and moved to stay the order to file an amended complaint under seal. The circuit court granted the stay, and the court of appeals granted the petition for interlocutory appeal.

6

¶8 While the petition for interlocutory appeal was pending before the court of appeals, the parents sought an injunction pending appeal with the circuit court under Wis. Stat. § 808.07(2). This motion asked for the same relief requested in the parents' original preliminary injunction motion. Two months after the court of appeals granted interlocutory appeal, the circuit court granted in part and denied in part the parents' motion for an injunction pending appeal. The circuit court enjoined the District

> from applying or enforcing any policy, guideline, or practice reflected or recommended in its document entitled "Guidance & Policies to Support Transgender, Non-binary & Gender-Expansive Students" in any manner that allows or requires District staff to conceal information or to answer untruthfully in response to any question that parents ask about their child at school, including information about the name and pronouns being used to address their child at school.

The circuit court added that its "injunction does not create an affirmative obligation to disclose information if that obligation does not already exist at law and shall not require or allow District staff to disclose any information that they are otherwise prohibited from disclosing to parents by any state or federal law or regulation." The circuit court denied the other injunctive relief requested by the parents. It reasoned that the parents had not demonstrated they were likely to succeed on appeal and, without knowing any specifics about the parents bringing the claim, the parents were unable to demonstrate they would suffer irreparable harm.

7

¶9 Having not received all they hoped for from the circuit court, the parents turned to the court of appeals. They moved for injunctive relief under Wis. Stat. § 808.07(2)(a) and cited Wis. Stat. § (Rule) 809.12, the ordinary authority for appealing the denial of a motion for relief pending appeal. In the alternative, they also sought injunctive relief under the general temporary injunction statute, Wis. Stat. § 813.02, along with Wis. Stat. § (Rule) 809.14, which specifies how to move an appellate court for relief.

¶10 The court of appeals denied the parents' motion for injunctive relief pending appeal, concluding the circuit court did not erroneously exercise its discretion. The parents then sought relief from this court on their motion for relief pending appeal while the court of appeals was still considering the merits of the confidentiality question. We denied the petition for review. Several months later, the court of appeals issued a decision on the confidentiality issue affirming the circuit court. Doe 1 v. Madison Metro. Sch. Dist., 2021 WI App 60, 399 Wis. 2d 102, 963 N.W.2d 832. The parents then turned to this court again, and we granted their petition for review.

## II. CONFIDENTIALITY

¶11 The main question before us is a narrow one: Did the circuit court err in ordering the parents to file a sealed complaint with their names and addresses which would be viewed by the court and attorneys alone? The parents' argument rests largely on its request that we reexamine, overrule, and

8

reformulate the law on anonymous litigation in Wisconsin to more closely resemble their description of the approach in federal courts. We decline to do so. We begin with the relevant law as it now exists.

## A. Legal Standards

¶12 The ordinary rule in Wisconsin and everywhere is that those availing themselves of the legal system should do so openly. See, e.g., State ex rel. La Crosse Trib. v. Cir. Ct. for La Crosse Cnty., 115 Wis. 2d 220, 241-42, 340 N.W.2d 460 (1983); Doe v. Village of Deerfield, 819 F.3d 372, 376-77 (7th Cir. 2016); 67A C.J.S. Parties §§ 173-74 (2022). While we protect certain vulnerable legal participants, such as children and crime victims, the business of courts is public business, and as such is presumed to remain open and available to the public. See Wis. Stat. § 757.14 ("The sittings of every court shall be public and every citizen may freely attend the same . . . except if otherwise expressly provided by law."); Wis. Stat. § (Rule) 809.81(8) ("Every notice of appeal or other document that is filed in the court and that is required by law to be confidential shall refer to individuals only by one or more initials or other appropriate pseudonym or designation."); Wis. Stat. § (Rule) 809.86 (directing that, in certain types of cases, the identity of crime victims should not be disclosed). Openness is the rule; confidentiality is the exception.

¶13 This principle plays out from the commencement of a lawsuit. Litigation in Wisconsin begins with the filing of a

summons and complaint, which must contain "the names and addresses of the parties to the action, plaintiff and defendant." Wis. Stat. § 801.09(1). These documents are filed with the clerk of the circuit court, who is required to "open to the examination of any person all books and papers required to be kept in his or her office and permit any person so examining to take notes and copies of such books, records, papers, or minutes therefrom." Wis. Stat. § 59.20(3)(a). We have described this as "a legislative declaration granting those persons who properly come under its umbrella 'an absolute right of inspection subject only to reasonable administrative regulations.'" State ex rel. Bilder v. Township of Delavan, 112 Wis. 2d 539, 553, 334 N.W.2d 252 (1983) (quoting State ex rel. J. Co. v. Cnty. Ct. for Racine Cnty., 43 Wis. 2d 297, 308, 168 N.W.2d 836 (1969)) (interpreting Wis. Stat. § 59.14(1) (1979-80), predecessor to § 59.20(3)(a)). This reflects "a basic tenet of the democratic system that the people have the right to know about operations of their government, including the judicial branch." Id. at 553.

¶14 In Bilder, we identified three exceptions to the right codified in Wis. Stat. § 59.20(3)(a). First, documents may be closed to the public when another statute so requires or authorizes. Id. at 554. Second, the same applies if disclosure would infringe on a constitutional right. Id. at 555. And third, "when the administration of justice requires it," a court may employ its inherent power under the constitution "to preserve and protect the exercise of its judicial function of

10

presiding over the conduct of judicial proceedings." Id. at 556.

¶15 With respect to the court's inherent power, many of the cases, including Bilder, focus on the public records nature of requests for confidentiality. See WISC-TV—Channel 3/Madison v. Mewis, 151 Wis. 2d 122, 442 N.W.2d 578 (Ct. App. 1989); Krier v. EOG Env't, Inc., 2005 WI App 256, 288 Wis. 2d 623, 707 N.W.2d 915. But the court's ability "to preserve and protect the exercise of its judicial function of presiding over the conduct of judicial proceedings" is not limited to public records requests. Bilder, 112 Wis. 2d at 556. Instead, the inherent authority of courts includes those powers "necessary for the courts to function as courts." State v. Schwind, 2019 WI 48, ¶12, 386 Wis. 2d 526, 926 N.W.2d 742. We see no reason why the inherent authority of courts would not also reach other interests implicated by the openness of judicial proceedings, including the potential for threats and harassment alleged in this case. These interests go to the core of the judiciary's duty to preside over and conduct judicial proceedings, as the circuit court recognized.

¶16 Seven years ago, this court adopted by rule a set of procedures governing the redaction and sealing of documents. See Wis. Stat. § 801.21; S. Ct. Order 14-04, 2015 WI 89 (issued Aug. 27, 2015, eff. July 1, 2016). While not enacted in the same way as other laws, the legislature has prescribed that our rules function as statutes. See Rao v. WMA Sec., Inc., 2008 WI 73, ¶35, 310 Wis. 2d 623, 752 N.W.2d 220. The underlying

11

assumption of § 801.21 is that court filings are public. The procedures we adopted provide a mechanism for protecting certain documents or information in these otherwise public records.

¶17 The basic procedure we created was to require a "party seeking to protect a court record" to "file a motion to seal part or all of a document or to redact specific information in a document."[6] Wis. Stat. § 801.21(2). Sealing and redacting are different. "'Seal' means to order that a portion of a document or an entire document shall not be accessible to the public." § 801.21(1)(b). "'Redact' means to obscure individual items of information within an otherwise publicly accessible document." § 801.21(1)(a). A party filing a motion under § 801.21 can file the material under temporary seal until a court rules on the motion, and the movant is required to "specify the authority for asserting that the information should be restricted from public access." § 801.21(2).

¶18 The circuit court then determines "whether there are sufficient grounds to restrict public access according to applicable constitutional, statutory, and common law." Wis. Stat. § 801.21(4). Section 801.21 does not provide substantive reasons to protect a document; that law is found elsewhere. For example, Wis. Stat. § 801.19 defines protected information that must be omitted or redacted from circuit court records——including passport and social security numbers. § 801.19(1)(a).

---

[6] We also specified that the court may act on its own initiative to "order sealing or redaction of any part of the court record or transcript." Wis. Stat. § 801.21(6).

12

And Wis. Stat. § 801.20(1) requires the director of state courts to "maintain a list of commonly-filed documents made confidential by statutes, court rules and case law." When the law provides grounds for redacting or sealing a document, the court must "use the least restrictive means that will achieve the purposes of this rule and the needs of the requester." § 801.21(4). A comment to the rule stresses this "section is intended to make it clear that filing parties do not have the unilateral right to designate any filing as confidential and that permission from the court is required." S. Ct. Order 14-04, § 7.

¶19 In sum, Wisconsin law has a strong presumption in favor of openness for judicial proceedings and records. But it can be overcome by specific statutory or constitutional rights, and in some circumstances, by the inherent power the constitution vests in the judicial branch. The general procedure this court has adopted involves redacting or sealing documents or portions of documents, and any restriction on public access must use the least restrictive means possible.

B. Analysis

¶20 Here, the circuit court concluded the parents may file their complaint under seal protecting their names and identities from the public. It did so after finding the risks to the parents and their children were legitimate. The court also ordered that the sealed, unredacted complaint would be accessible only to the circuit court and to defense counsel

13

following the adoption of a signed protective order. Essentially, the narrow question in this case centers on the parents' argument that granting defense counsel access to the sealed complaint should be reversed. They assert that they and their children face a serious risk of harm, their identities are irrelevant to their legal claims, and disclosing their identities to opposing counsel could result in that information being leaked. At bottom, the parents want to litigate with total anonymity, except with respect to the circuit court, or alternatively, with respect to the circuit court and a small subset of attorneys at one of the firms defending the District's policy.

¶21 Perhaps recognizing the weakness of their argument under existing law, the parents come with a bigger ask. Drawing on federal case law, they ask us to adopt a new multifactor balancing test. The parents focus our attention on several factors with an established history of relevance in federal courts: the plaintiffs are parents of minor children; the case implicates deeply held beliefs likely to provoke an intense emotional response; and release of their identities poses significant risks of harassment and retaliation.[7] They further ask us to conduct our review de novo, giving no deference to the circuit court.

---

[7] Reference to federal law in this area is not improper. Wisconsin courts have looked to federal cases for guidance on sealing documents. See WISC-TV—Channel 3/Madison v. Mewis, 151 Wis. 2d 122, 134-35, 442 N.W.2d 578 (Ct. App. 1989).

14

¶22 In response, the District argues that none of these concerns would warrant withholding the parents' identities from attorneys in the case, each of whom would be duty-bound by court order to keep the parents' identities confidential. Defense counsel says their strategy and ability to litigate these claims could shift depending on each parent's unique circumstances. This would impact, they assert, legal defenses they might advance, as well as the scope of any temporary or permanent relief ordered. The parents disagree, and say their identities are irrelevant to their claims.

¶23 We begin with the standard of review. The court of appeals in this case and in prior cases has held that the circuit court's order should be reviewed for an erroneous exercise of discretion. Doe 1, 399 Wis. 2d 102, ¶18, (citing Krier, 288 Wis. 2d 623, ¶23). We agree. Under that standard, a court must still determine whether the appropriate standard of law was applied. Thus, a court incorrectly construing a statute to support sealing a document could be reversed for applying an improper standard of law. Krier, 288 Wis. 2d 623, ¶23 ("An erroneous exercise of discretion occurs if . . . the trial court applied the wrong legal standards."). But once the proper law is identified and employed, the judgment call in determining

whether to keep information confidential is rightly within the circuit court's discretion.[8]  Id.

¶24  In this case, the circuit court's decision to withhold the parents' identities from the public and the District, but not the District's attorneys, was well within its discretion. As the District identified, resolving the parents' claims through the courts could depend on a number of significant legal questions which can be evaluated only if the District's attorneys know the parents' identities.

¶25 Of no minor importance, the District's attorneys stressed their independent ethical responsibilities under our rules.  For example, attorneys must avoid conflicts of interest. See, e.g., SCR 20:1.7(a) ("[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest.").  Among other circumstances, a conflict of interest arises if "the representation of one client will be directly adverse to another client," or if the representation involves "the assertion of a claim by one client against another client represented by the lawyer."  SCR 20:1.7(a)(1), (b)(3).  At oral argument, the District expressed concern that its attorneys cannot know if their representation of the District creates a conflict of interest with any of the parents without knowing who the parents are.  Already in this case two of the parents

_____

[8] We observe that discretionary review appears to be the standard approach in federal courts as well.  See, e.g., Doe v. Village of Deerfield, 819 F.3d 372, 376 (7th Cir. 2016) (reviewing "a motion for leave to proceed anonymously" "for abuse of discretion only").

16

voluntarily withdrew from the suit because the parents' counsel determined their participation created a conflict of interest for the District's attorneys. The parents suggest they can police any potential conflicts, but our rules of ethics place that independent responsibility on the attorneys representing the District. See ABA Comment [2] SCR 20:1.7 (noting that resolving a conflict of interest problem "requires the lawyer" to take certain steps); ABA Comment [4] SCR 20:1.7 ("If a conflict arises after representation has been undertaken, the lawyer ordinarily must withdraw from representation, unless the lawyer has obtained the informed consent of the client . . . ."). At the very least, this is a significant consideration regarding the parents' request to proceed without revealing their identities to opposing counsel. The circuit court exercised its discretion in this case in a way that facilitates the District's attorneys' ability to follow their ethical duties.

¶26 The parents' identities may also have implications for the substantive issues in this case. Although the parents' bring a facial challenge against the Policy, arguing it is unconstitutional in every circumstance, facts specific to the parents or their children could influence the availability and scope of judicial relief. For example, the parents raise a free exercise of religion claim under Article I, Section 18 of the Wisconsin Constitution. But without knowing the parents' identities, how can the District's attorneys inquire whether the parents have a sincerely held religious belief regarding this

17

aspect of their children's upbringing? Individual parents in this case might also have differing beliefs which could affect the evaluation of their claims. Additionally, it could be that various factual wrinkles alter the nature of the alleged violation of the right to parent one's child as well as the scope of relief the parents could be entitled to. For example, it is unclear if the constitutional right asserted would apply in the same way to a parent whose child has turned 18 but is still attending District schools. The same could be true of a parent whose parental rights have been terminated by a court or a parent who has ceded certain decisions to another parent pursuant to a custody arrangement. If there is an Individualized Educational Program in place for the child, that could again complicate whether a particular parent is entitled to relief. See Wis. Stat. § 115.787. Finally, the District noted other legal defenses——including ripeness, mootness, and lack of standing——which it asserts it cannot advance without knowing the parents' identities. Each of these variables may influence whether the parents are entitled to judicial relief, or how far such relief should extend.[9]

¶27 The parents make an earnest plea that the risk of harassment and retaliation is real. The problem with their argument is that the circuit court agreed and protected their

---

[9] We do not decide that any of these considerations should or will impact the claims. Rather, based on this briefing, we conclude these concerns could impact the arguments the District might reasonably make. And therefore, they weigh in favor of affirming the circuit court's exercise of discretion.

identities. Therefore, the crux of the parent's continued worry is their fear that the attorneys on the other side will intentionally or unintentionally violate the court's protective order and expose them to the risks they identify. Attorneys are duty-bound to follow court orders, however. We have no evidence that any of the law firms defending the District's policy have violated a protective order in the past or that there is any risk of them doing so now. In fact, counsel for the parents conceded to the circuit court that there was "no reason to doubt that the lawyers in this case will make every effort to preserve the plaintiffs' anonymity and follow a court order." Nevertheless, the parents essentially make an unfounded accusation that the attorneys on the other side will risk their law licenses, through carelessness or otherwise. This pure speculation lacks merit. Each attorney is an officer of the court subject to strict ethical rules in the maintenance of confidential information. Each would need to agree to a protective order——the specifics of which have not yet been negotiated. The parents present no reason to think the order to keep their identities private as to the District and the general public will not be followed.

¶28 Furthermore, we observe the circuit court's exercise of discretion was a proper application of the statutory test. Wisconsin Stat. § 801.21(4) directs that if "there are sufficient grounds to restrict public access" to court records, "the court will use the least restrictive means that will achieve the purposes of this rule and the needs of the

19

requester." The circuit court concluded some protection for the parents' identities was warranted and decided to shield their names from public view and the District's view. But the court did not see the same danger in disclosing the parents' names to the District's attorneys. We see no error in this conclusion.

¶29 Although the parents frame their arguments around whether Wisconsin permits totally anonymous litigation, we do not decide that question because we need not. We leave for another day whether a future litigant can proceed anonymously in a case. Instead, we conclude that the circuit court's decision to allow the parents to proceed pseudonymously, but not to prevent opposing attorneys from knowing their identity, was well within the circuit court's discretion.

## III. INJUNCTION

¶30 Finally, the parents ask us to provide injunctive relief on the underlying Policy. As best we can tell, this request stems from two different statutory bases——Wis. Stat. § 808.07(2)(a) and Wis. Stat. § 813.02——following several motions the parents filed with the circuit court and court of appeals. Given the posture of this case, it is not appropriate to grant the parents' requested temporary relief.

¶31 We first address the request for temporary injunctive relief under Wis. Stat. § 808.07(2)(a). That statute provides: "During the pendency of an appeal" circuit courts and appellate courts are permitted to: "1. Stay execution or enforcement of a judgment or order; 2. Suspend, modify, restore or grant an

injunction; or 3. Make any order appropriate to preserve the existing state of affairs or the effectiveness of the judgment subsequently to be entered." § 808.07(2)(a). Notably, any injunctive relief granted under § 808.07(2)(a) lasts only "[d]uring the pendency of an appeal." Once an appeal ends, an injunction issued under § 808.07(2)(a) terminates. In addition, Wis. Stat. § (Rule) 809.12 requires that any "person seeking relief under s. 808.07 shall" file the motion in circuit court first unless impractical. Accordingly, in the ordinary course, an appellate court reviews a circuit court's decision on a motion seeking relief pending appeal under an erroneous exercise of discretion standard. Werner v. A.L. Grootemaat & Sons, Inc., 80 Wis. 2d 513, 519, 259 N.W.2d 310 (1977). The appellate court does not conduct the analysis anew; it looks for a reasonable basis to sustain a circuit court's discretionary decision. State v. Rhodes, 2011 WI 73, ¶26, 336 Wis. 2d 64, 799 N.W.2d 850.

¶32 Here, the circuit court granted in part and denied in part the parents' motion for a temporary injunction pending appeal under Wis. Stat. § 808.07(2)(a).[10] The court of appeals concluded the circuit court properly exercised its discretion and declined to grant any further relief. Doe 1 v. Madison

---

[10] As previously noted, the court enjoined the district "from applying or enforcing" the policy "in any manner that allows or requires District staff to conceal information or to answer untruthfully in response to any question that parents ask about their child at school, including information about the name and pronouns being used to address their child at school."

21

<u>Metro Sch. Dist.</u>, No. 2020AP1032, unpublished order (Wis. Ct. App. Nov. 9, 2020). This is an appeal of the circuit court's confidentiality decision, however, which this opinion resolves—thereby ending the appeal. Even if we thought the lower courts erred, any decision to provide further injunctive relief pending appeal would immediately be a dead letter by virtue of this decision. Therefore, the motion for relief pending appeal is moot. See <u>PRN Assocs. LLC v. DOA</u>, 2009 WI 53, ¶25, 317 Wis. 2d 656, 766 N.W.2d 559 ("An issue is moot when its resolution will have no practical effect on the underlying controversy."). Addressing these matters now would constitute an advisory opinion on an issue that is, albeit in a different posture, still pending in the circuit court below. See <u>State ex rel. Collison v. City of Milwaukee Bd. of Rev.</u>, 2021 WI 48, ¶46, 397 Wis. 2d 246, 960 N.W.2d 1 (declining to "depart from our general practice that this court will not offer an advisory opinion"). Accordingly, we decline to provide any relief under § 808.07(2)(a).

¶33 The parents also appear to ask us for injunctive relief under Wis. Stat. § 813.02. That section provides in relevant part:

> When it appears from a party's pleading that the party is entitled to judgment and any part thereof consists in restraining some act, the commission or continuance of which during the litigation would injure the party, or when during the litigation it shall appear that a party is doing or threatens or is about to do, or is procuring or suffering some act to be done in violation of the rights of another party and tending

22

to render the judgment ineffectual, a temporary injunction may be granted to restrain such act.

§ 813.02(1)(a). The parents assert that they can bring such a motion directly to an appellate court under Wis. Stat. § (Rule) 809.14, which sets forth the procedure for filing motions in appellate courts. See § (Rule) 809.14(1) ("A party moving the appellate court for an order or other relief in a case shall file a motion for the order or other relief.").

¶34 The parents first moved for injunctive relief under Wis. Stat. § 813.02 in the circuit court. That motion remains before the circuit court pending resolution of this appeal. The parents now seem to suggest the circuit court erred by failing to address their § 813.02 motion. As best we can tell from the record, the circuit court reasoned that it could not address the parents' claim for irreparable harm——a central component of the temporary injunction standard——without additional information gleaned from disclosure of their identities (while still concealing that information from the public). Once the parents appealed the circuit court's confidentiality decision, the circuit court did not believe it had the necessary information to decide the motion.

¶35 We decline to address whether the circuit court's decision to wait to adjudicate this motion was erroneous. The parents have not developed any arguments for how this court should determine whether the circuit court erred or whether this would be the proper vehicle to address a circuit court's non-decision. Beyond complaining that the motion has not been

23

decided yet, the parents jump right into the merits of their plea for injunctive relief, never developing an argument that the circuit court committed procedural error.  As we have said many times, "We do not step out of our neutral role to develop or construct arguments for parties; it is up to them to make their case."  Serv. Emps. Int'l Union, Loc. 1 v. Vos, 2020 WI 67, ¶24, 393 Wis. 2d 38, 946 N.W.2d 35.  With the appeal resolved, we expect the circuit court will address the pending motion and all other matters put on hold by virtue of this appeal.

¶36 The parents also sought a temporary injunction under Wis. Stat. § 813.02 from the court of appeals.  In that motion, the parents stated that they believed there was no meaningful difference from the relief they could receive under either § 813.02 or Wis. Stat. § 808.07.  The court of appeals addressed this motion in a footnote, stating that its decision to uphold the circuit court's injunction and not grant any further relief would be the same under either statute.[11]  Doe 1, No. 2020AP1032, unpublished order at 6 n.4.  But the court of appeals also noted

---

[11] The parents' procedural arguments are difficult to track, but for the reasons we explain below, it's not clear the court of appeals was correct that the analysis would be the same.  We understand the parents to be seeking a separate injunction under Wis. Stat. § 813.02.  If so, and if that is a new, independent motion, it presumably would not come with the same deference the court of appeals properly gave to the circuit court's decision on the parents motion for relief pending appeal under Wis. Stat. § 808.07(2)(a).

24

"the parents do not explain why this court would have authority to grant injunctive relief under § 813.02."[12]  Id.

¶37 We observe, as the court of appeals did, that the parents provide no authority to support the notion that we should decide a motion for temporary injunction under Wis. Stat. § 813.02 in the first instance.  This is especially true when such a motion is pending and unresolved before the circuit court.  Allowing this procedural leap-frog would render nugatory the discretionary review appellate courts apply when reviewing any form of temporary injunctive relief granted or denied by the circuit court.  A litigant could simply seek the same injunctive relief at each level by filing a new motion under § 813.02, and thereby sidestep the deferential standard of review appellate courts apply in this context.[13]  While we cannot say such a

---

[12] At oral argument, the parents' counsel stated that the circuit court on remand would be bound by the court of appeals' decision on the Wis. Stat. § 813.02 motion.  We disagree.  The court of appeals declined to address the parents' motion as a de novo matter under § 813.02, instead appearing to view its role as reviewing the circuit court's exercise of discretion.  On remand, the circuit court can, in the first instance, address the parents' motion for a temporary injunction filed under § 813.02.

[13] See Wis. Ass'n of Food Dealers v. City of Madison, 97 Wis. 2d 426, 429, 293 N.W.2d 540 (1980) ("The denial of a temporary injunction under [Wis. Stat. § 813.02(1)] is a matter within the discretion of the trial court, and the sole issue on appeal is whether the trial court abused its discretion."); Browne v. Milwaukee Bd. of Sch. Dirs., 83 Wis. 2d 316, 336, 265 N.W.2d 559 (1978) ("The power to grant a temporary injunction lies within the discretion of the trial court.  The trial court's decision concerning an injunction will not be reversed unless the discretion has been abused."); Codept, Inc. v. More-Way N. Corp., 23 Wis. 2d 165, 171, 127 N.W.2d 29 (1964) ("It is an elementary rule of law that the granting or refusal of a

25

motion would never be appropriate, we are unable to find any support for the proposition that addressing a new motion for injunctive relief under § 813.02 would be proper at this juncture.

¶38 The original preliminary injunction motion under § 813.02 remains pending in circuit court. Following the ordinary rules of litigation and appellate procedure dictates allowing the circuit court to address the matter. If authority exists for the procedural process advocated by the parents, they have not provided it. It seems that the only way this court could do what we are being asked to do would be a dramatic and unprecedented invocation of our superintending authority over lower courts. We were not asked to rely on these extraordinary powers, and we will not construct such an argument for the parents. See Vos, 393 Wis. 2d 38, ¶24.

¶39 The parents also indicate that the injunction arguments would be the same in a subsequent appeal, and propose that we should just step in and settle the matter now. This is a troubling suggestion. As an initial matter, we do not know how arguments may develop as this case proceeds or how the circuit court's decision could affect them. But even if the

_____

temporary injunction is a matter lying within the discretion of the trial court, and its determination in regard thereto will not be upset on appeal unless an abuse of discretion is shown."); Gimbel Bros. v. Milwaukee Boston Store, 161 Wis. 489, 497, 154 N.W. 998 (1915) ("We conclude that it was within the sound discretion of the trial court to refuse the injunction prayed for.").

arguments remained identical, that does not provide a foundation for us to opine on legal issues not properly before us. Litigation rules and processes matter to the rule of law just as much as rendering ultimate decisions based on the law. Ignoring the former to reach the latter portends of favoritism to certain litigants and outcomes. We do not suggest the constitutional claims here are inconsequential. But our adjudication of them must be rooted in applying the same rules to everyone. Our rules of judicial process matter, and we will follow them.[14]

¶40 In sum, we decline the parents' request for temporary injunctive relief under Wis. Stat. § 808.07(2)(a) because any relief we could grant would immediately become moot. We also decline the request for temporary injunctive relief under Wis. Stat. § 813.02. Such a motion remains pending in the circuit court, and the parents have provided no authority to support the notion that we can or should grant injunctive relief under § 813.02 in this procedural context. We do not reach the merits of the injunction motion at this preliminary stage of the litigation.

---

[14] The dissent does not claim that the parents' temporary injunction request is something we can address in the normal course. Instead, it advocates an extraordinary constitutional intervention not even argued by the parents, and suggests failure to follow its lead constitutes an abdication of the court's responsibility. We reject the dissent's sense of judicial duty.

27

IV. CONCLUSION

¶41 This is an appeal of a circuit court's decision to allow parents challenging the District's Policy to remain confidential, but not as to the attorneys for those defending the Policy. We conclude the circuit court did not erroneously exercise its discretion in drawing this line. The parents further ask this court to grant temporary injunctive relief on the underlying Policy. But the request for relief pending appeal is moot by virtue of this decision, and the underlying preliminary injunctive relief sought remains pending before the circuit court. Addressing the parents' request for injunctive relief is therefore not proper for a case at this preliminary stage. We affirm the court of appeals and remand to the circuit court to proceed with the adjudication of the parents' claims.

*By the Court.*——The decision of the court of appeals is affirmed and the cause is remanded to the circuit court.

¶42 PATIENCE DRAKE ROGGENSACK, J. *(dissenting).* Today the majority opinion abdicates the court's responsibility, once again, by choosing not to address the critical issue on which this case turns: the constitutional right of parents to raise their children as they see fit.[1] Today, parents' constitutional rights, the high burden of proof required to intervene in parents' parenting decisions, and the presumption that parents act in the best interests of their children are all upended by the majority opinion's silence. It fails parents, fails to uphold the constitution, and fails to provide parents with due process before Madison Metropolitan School District (MMSD), acting behind closed doors, overtakes parents' constitutional right to parent their own children.

¶43 The John Doe plaintiffs (hereinafter the parents) have children in the MMSD. They sue on behalf of all parents with children in MMSD, not on behalf of any particular parent-child

---

[1] This court, in a series of recent decisions, has shown an unwillingness to resolve significant legal issues presented to us for decision. Hawkins v. Wis. Elections Comm'n, 2020 WI 75, ¶¶29-83, 393 Wis. 2d 629, 948 N.W.2d 877 (Ziegler, J. dissenting); Trump v. Biden, 2020 WI 91, ¶62, 394 Wis. 2d 629, 951 N.W.2d 568 (Roggensack, C.J. dissenting); Gymfinity, Ltd. v. Dane Cnty., No. 2020AP1927-OA, unpublished order (Wis. Dec. 21, 2020); Trump v. Evers, No. 2020AP1971-OA, unpublished order (Wis. Dec. 3, 2020); Wis. Voters All. v. Wis. Elections Comm'n, No. 2020AP1930-OA, (Wis. Dec. 4, 2020); Mueller v. Jacobs, No. 2020AP1958-OA, unpublished order (Wis. Dec. 3, 2020); Zignego v. Wis. Elections Comm'n, No. 2019AP2397, unpublished order (Wis. Jan. 13, 2021); Stempski v. Heinrich, No. 2021AP1434-OA, unpublished order (Wis. Aug. 27, 2021); Gahl v. Aurora Health Care, Inc., No. 2021AP1787, unpublished order (Wis. Oct. 25, 2021); State ex rel. Robin Vos v. Cir. Ct. for Dane Cnty., No. 2022AP50-W, unpublished order (Wis. Jan. 11, 2022).

relationship. As such, any individual parent's name is irrelevant to the constitutional analysis. They assert that a MMSD guidance policy that affirms a child's gender transition to a sexual designation different from the child's sex at birth and deceives the child's parents about that choice violates their fundamental constitutional rights as parents contrary to Article I, Section 1 of the Wisconsin Constitution and the Fourteenth Amendment of the United States Constitution. The parents seek to enjoin MMSD from continuing to usurp their constitutional right to direct the upbringing and education of their children by requiring MMSD to immediately disclose a child's gender-identity concerns to the parents and by preventing MMSD from enabling their children to change gender-identity without parental consent. They also seek to go forward in this case using pseudonyms.

¶44 A majority of this court blocks all relief for parents by restructuring the pending dispute. The majority says: "The main question before us is a narrow one: Did the circuit court err in ordering the parents to file a sealed complaint with their names and addresses which would be viewed by the court and attorneys alone?"[2] We accepted more than the question of using pseudonyms when we accepted review.

¶45 The majority opinion's restructuring of the controversy denies all parents who have children in a MMSD school a forum in which to litigate MMSD's usurpation of their constitutional right to direct the upbringing of their children.

_____

[2] Majority op., ¶11.

2

Both the United States Constitution and the Wisconsin Constitution support the conclusion that MMSD's Policies cannot deprive parents of their constitutional rights without proof that parents are unfit, a hearing, and a court order, in other words, without according parents due process. Instead, the majority keeps MMSD as the decision-maker of basic healthcare choices that may involve gender-identity for children who attend a MMSD school. And finally, the majority's non-decision, decision participates in MMSD's ability to hide from parents what MMSD actually has been doing behind closed schoolhouse doors.

¶46 The circuit court erred when it concluded that it could not permit parents to employ pseudonyms in this lawsuit. The court of appeals erred in affirming that decision, even while noting that the circuit court did have the power to permit the use of pseudonyms, contrary to the circuit court's decision.

¶47 Furthermore, I conclude that we can and should employ our constitutional supervisory authority to decide this constitutional controversy because it cries for judicial resolution. This court, as a court of last resort, should act to affirmatively grant parents' request for a temporary injunction that enjoins MMSD from: (1) enabling children to socially transition to a different gender-identity without parental consent; (2) preventing teachers and other staff from telling parents that their child may have gender-identity concerns; and (3) deceiving parents by using different names and pronouns in front of parents than are used at school. For the

3

reasons set out below, I conclude that the circuit court erred in not granting the temporary injunction that was requested in February of 2020. Because the majority opinion chooses not to decide the constitutional controversy that was presented, I respectfully dissent.

## I. BACKGROUND

¶48 The parents filed this action for Declaratory Judgment in Dane County Circuit Court on February 18, 2020, seeking declaration that MMSD violated their constitutional right to direct the upbringing of their children through employment of MMSD's "Guidance & Policies to Support Transgender, Non-binary & Gender-Expansive Students" (hereinafter MMSD Policies). They filed this case anonymously, using pseudonyms due to the sensitive nature of their claims. They sought to protect the identity of minor children and to protect parents and their children from retaliation or harassment for raising a controversial issue.

¶49 The parents also sought a temporary injunction prohibiting MMSD from enabling children to socially transition to a different gender-identity at school by selecting a new "affirmed name and pronouns" without parental notice and consent. MMSD moved to dismiss the complaint because parents had not provided their names and addresses.

¶50 The circuit court did not rule on the parents' request for a temporary injunction. However, the circuit court found:

> [A]s a factual matter, I believe the plaintiffs have satisfied the court of the need to preserve their confidentiality and, in particular, when analyzed against the backdrop of the relevance or irrelevance

4

of their identity on their ability to challenge the policy in question. . . . "[A]s a factual matter, would their names be disclosed, they would likely be subject to threats and intimidation, which would be wholly inappropriate and frustrate the orderly functioning of the [circuit] court case.[3]

¶51 Although the circuit court denied MMSD's motion to dismiss, the circuit court also required the parents to file an amended complaint containing their names and addresses, which would be accessible to the circuit court and "attorneys for the litigants." Because the circuit court found that the parents and their children would be subjected to harassment due to their positions on the MMSD gender-identity policy, the circuit court ordered that the amended complaint was to be filed under seal.

¶52 The parents appealed the circuit court's requirement of identity disclosure, and the court of appeals affirmed. The parents petitioned us for review, which we granted. In their petition, the parents asked us to review whether they may sue anonymously in Wisconsin courts, and they also asked us to review whether the circuit court erred by declining to temporarily enjoin MMSD's Policies that infringe parents' constitutional right to parent their children, which motion for a temporary injunction the parents filed on February 19, 2020, the day after they filed this action.

## II. DISCUSSION

### A. Standard of Review

¶53 We review the circuit court's decision that it lacked authority to permit the parents to use pseudonyms in this

---

[3] Circuit Ct. Decision, May 26, 2020, 22.

5

litigation for an erroneous exercise of discretion. State v. Schwind, 2019 WI 48, ¶2, 386 Wis. 2d 526, 926 N.W.2d 742. Whether the circuit court actually lacked such authority presents as a question of law that is subject to our independent review. State v. Henley, 2010 WI 97, ¶29, 328 Wis. 2d 544, 787 N.W.2d 350. A court erroneously exercises its discretion when it applies an incorrect standard of law to the question presented. Krier v. EOG Env't, Inc., 2005 WI App 256, ¶23, 288 Wis. 2d 623, 707 N.W.2d 915.

¶54 We review independently whether MMSD's Policies interfere with the parents' constitutional right to raise their children as they see fit such that their request for a temporary injunction should have been granted. State v. Lavelle W., 2005 WI App 266, ¶2, 288 Wis. 2d 504, 708 N.W.2d 698. Whether this court should employ its superintending authority to address the parents' request for a temporary injunction is a discretionary decision subject to our independent review. State v. Green, 2022 WI 30, ¶3, 401 Wis. 2d 542, 973 N.W.2d 770.

B. Pseudonyms in Litigation

¶55 The circuit court was asked to permit parents' use of pseudonyms in this litigation. The parents made their motion based on concerns that they and their children would be harassed and the litigation disrupted if the parents' names were known. The circuit court found that their concerns were valid. The circuit court said:

> I agree with the plaintiff, Mr. Berg, in terms of the factual basis they've demonstrated on the legitimacy and sincerity of their concern over the release of their identities. And so as a factual

6

matter, I believe the plaintiffs have satisfied the court of the need to preserve their confidentiality and, in particular, when analyzed against the backdrop of the relevance or irrelevance of their identity on their ability to challenge the policy in question.[4]

However, the circuit court precluded the use of pseudonyms because it concluded that it did not have the authority to authorize their use. The circuit court explained:

I'm bound by Wisconsin law, both in terms of what the statutes set forth and the Wisconsin common law as established by the Supreme Court. There is no precedent for what the plaintiff is asking for in the current published appellate case law.[5]

¶56 Here, the circuit required disclosure of the parents' names to the court and to all parties' attorneys in the litigation. The parents do not object to filing an amended complaint that discloses their names for review by the circuit court. However, they do object to permitting review by the parties' attorneys. They contend that a leak of their identities is multiplied by the number of people who have that information. Once the parents' identities are disclosed, there is no way of undoing that disclosure, and as the circuit court found, harassment of the parents and their children and disruption of this litigation likely will follow.

¶57 The circuit court concluded that allowing the parties' attorneys to view the amended complaint was acceptable because the attorneys could be expected to keep the parents' identities confidential. The circuit court did not assess whether any

---

[4] Circuit Ct. Hr'g Tr., May 26, 2020, at 22.

[5] Id.

7

remedy could be provided to the parents and their children when their identities were disclosed.

¶58 Litigation conducted anonymously has been permitted in very similar circumstances in federal district courts. It has been approved by the Fifth, Sixth, Seventh, and Ninth Circuits. For example, in Doe ex rel. Doe v. Elmbrook Sch. Dist., 658 F.3d 710, 721-24 (7th Cir. 2011), the court concluded that the district court carefully considered detailed affidavits supporting the request to proceed anonymously. Therefore, it affirmed the district court's decision.

¶59 The United States Supreme Court has approved the use of pseudonyms in litigation, explaining, "Our decision in Roe v. Wade, establishes [] that, despite her pseudonym, we may accept as true, for this case, Mary Doe's existence and her pregnant state." Doe v. Bolton, 410 U.S. 179, 187 (1973), abrogated by Dobbs v. Jackson Women's Health Org., No. 19-1392, 2022 WL 2276808 (U.S. June 24, 2022). However, we do not need to adopt federal standards in order to permit litigation by pseudonyms in Wisconsin. As I explain below, Wisconsin courts have that authority.

¶60 When justice has required it, we have approved limiting public access to judicial records. For example, in State ex rel. Bilder v. Delavan Twp., 112 Wis. 2d 539, 334 N.W.2d 252 (1983), we explained:

> The circuit court under its inherent power to preserve and protect the exercise of its judicial function of presiding over the conduct of judicial proceedings has the power to limit public access to judicial records when the administration of justice requires it.

8

*Id.* at 556. We also have recognized that "the inherent power of the courts 'in many respects goes beyond those conferred by statute.'" *Id.* The party seeking "to close court records bears the burden of demonstrating, with particularity, that the administration of justice requires that the court records be closed." *Id.* at 556-57.

¶61 The command, "when administration of justice so requires" is at the core of Wisconsin courts' power to proceed as an independent judiciary. This power may require protection of some who are involved in Wisconsin's judicial system. *Gabler v. Crime Victims Rts. Bd.*, 2017 WI 67, ¶58, 376 Wis. 2d 147, 897 N.W.2d 384 (explaining that "a concern about possible re-traumatization of victims influenced our decision permitting the Department of Justice to withhold requested public records" in the administration of justice). In Wisconsin, the administration of justice permits a court to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" including closing court records. *State ex rel. Mitsubishi Heavy Indus. Am., Inc. v. Cir. Ct. for Milwaukee Cnty.*, 2000 WI 16, ¶40, 233 Wis. 2d 1, 605 N.W.2d 868.

¶62 The court of appeals, in its review of the circuit court's order that permitted review of the parents names by the attorneys for all parties to this litigation, disagreed with the circuit court's assessment of its own power. It concluded that the circuit court had the power to permit the parents to use pseudonyms in this litigation rather than requiring their actual

9

names.  Doe v. Madison Metro. Sch. Dist., 2021 WI App 60, ¶31 n.8, 399 Wis. 2d 102, 963 N.W.2d 823.  It said, "Wisconsin circuit courts have the power to enter as restrictive a protective order as is warranted, taking into account the facts and circumstances of a particular case and the public interest or the administration of justice."  Id.

¶63 However, the court of appeals nevertheless "decline[d] to adopt" the use of pseudonyms rather than the statutory procedure set out in Wis. Stat. § 801.21(2).  Id., ¶31.  The court of appeals did not evaluate whether a remedy could be provided to the parents and their children when a disclosure of their identities occurred.  It seemed to presume that no such leak would occur.

¶64 The circuit court and the court of appeals appear not to have realistically considered what likely will occur with regard to the parents' identities in today's tell-all world. Even the United States Supreme Court, an institution that has historically demanded the highest levels of integrity and confidentiality, has been subject to unauthorized leaks.  These leaks have consequences.  One need look no further than this case for examples.  Following the leak of the Supreme Court's draft opinion in regard to abortion, Wisconsin Family Action, an amicus in this case, had its offices vandalized and attacked with Molotov cocktails.[6]  Here, the circuit court found that the

---

[6] Press Release, Wisconsin Family Action, Historical Mothers' Day 2022 Attack on Wisconsin Family Action, https://wifamilyaction.org/mothers-day-attack-wfa.

10

parents and their children likely would be subjected to harassment if parental identities were disclosed.[7]

¶65 The judicial system has no remedy for a violation of the confidentiality of an amended complaint that identifies the parents when filed under seal as the circuit court ordered. Unnecessary harm will be inflicted on parents and minor children. There is no compelling reason to ignore the very real possibility of a leak of the parents' identities and the inability of the court to fashion a remedy for the disclosure. In the interests of the administration of justice, the circuit court should have permitted the use of pseudonyms. Gabler, 376 Wis. 2d 147, ¶58; Bilder, 112 Wis. 2d at 556; Mitsubishi Heavy Indus. Am., 233 Wis. 2d 1, ¶40.

¶66 I agree with the conclusion of the court of appeals that the circuit court erred when it applied the wrong legal standard to the parents' motion to proceed by pseudonyms. In so doing, the circuit court erroneously exercised its discretion. Krier, 288 Wis. 2d 623, ¶23. The circuit court had the power to permit the use of pseudonyms, as the court of appeals explained. Doe 1, 399 Wis. 2d 102, ¶31 n.8. I conclude the circuit court erred, and the court of appeals did so as well, in requiring the parents to disclose their identities to the attorneys for the other parties to the litigation. Neither court evaluated or appreciated that there is no remedy for leaks of parental identities. Both courts acknowledged that disclosure of identities likely would lead to harassment of the parents and

---

[7] Circuit Ct. Decision, May 26, 2020, 22.

11

their children and disruption of this litigation, but they neglected to recognize or evaluate how that would affect the administration of justice. Stated otherwise, their neglect affected the core of our independence as courts: the administration of justice. It was error to fail to evaluate the effect on the parents and the minor children were identities disclosed.

## C. Constitutional Right to Parent

¶67 The constitutional right of parents to direct the raising of their children is at the heart of this lawsuit. It is that constitutional right that the majority opinion intentionally disregards.[8] Schools do not have the right to parent our children on gender-identity issues. Yet, a majority of this court greets parents' pleas to temporarily enjoin MMSD with silence, which silence permits schools to make gender-identity decisions for children in a MMSD school without parental knowledge or consent.

¶68 Furthermore, as we consider the constitutional right to parent that is raised in the Petition for Review, it is important to note that a part of the problem we face here is of the circuit court's own making. On February 19, 2020, the parents moved for Temporary Injunction to enjoin MMSD's Policies while this litigation is pending. They sought to prohibit MMSD from:

---

[8] "It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule." Marbury v. Madison, 1 Cranch 137, 177 (1803).

12

(1) enabling children to socially transition to a different gender identity at school by selecting a new "affirmed named and pronouns," without parental notice or consent; (2) preventing teachers and other staff from communicating with parents that their child may be dealing with gender dysphoria, or that their child has or wants to change gender identity, without the child's consent; and (3) deceiving parents by using different names and pronouns around parents than at school.

The parents asserted in their motion that some of the "policies violate parents' constitutional rights to direct the upbringing of their children." They asserted that "[w]hether a child with gender dysphoria should socially transition to a different gender identity is a significant and controversial healthcare decision that falls squarely within parental decision-making authority."

¶69 More than two years have passed without a decision by the circuit court on the parents' motion for a Temporary Injunction. If the circuit court had addressed the pending motion, the losing party could have appealed that decision years ago. The litigation could have returned to the circuit court to decide whether the identities of the parents were irrelevant, as the parents contend because they sue on behalf of all parents to raise their children as they see fit, or relevant identities, as MMSD alleges. The administration of justice is affected by the circuit court's non-decision because by not deciding, the circuit court has effectively denied the motion for a temporary injunction and the circuit court also has denied the parents' opportunity to appeal an adverse ruling.

¶70 The Petition for Review, raised the issue of temporary injunction standards, contending that "the lower courts'

13

decisions are directly 'in conflict with' this Court's 'controlling' precedents as to proper application of the temporary injunction standards . . . ."[9] The Petition for Review did so, recognizing that the circuit court and court of appeals had decided motions for injunction pending appeal, and also recognizing that the standard for whether to grant a temporary injunction, Werner v. A.L. Grootemaat & Sons, Inc., 80 Wis. 2d 513, 519, 259 N.W.2d 310 (1977), and a stay pending appeal, State v. Gudenschwager, 191 Wis. 2d 431, 440, 529 N.W.2d 225 (1995), employ similar tests.

¶71 The parents moved for an injunction pending appeal pursuant to Wis. Stat. § 808.07(2)(a), which the majority opinion denied because its decision ends the appeal and therefore any injunction pending appeal that it would grant would also end with its decision.[10] The parents also renewed their request for a temporary injunction pursuant to Wis. Stat. § 813.02.

¶72 The majority opinion ignores this part of the Petition for Review, claiming that the parents have not provided a legal theory by which the majority could reach the failure of the circuit court to address the motion for a temporary injunction that has been pending for more than two years.[11] By its decision, the majority opinion chooses to duck the significant question of constitutional law that was raised in the Petition

---

[9] Petition for Review, Aug. 13, 2021, 3.

[10] Majority op., ¶40.

[11] Id., ¶¶38, 39.

for Review, which I address below. The majority opinion also chooses to ignore the circuit court's failure to meet its obligations under SCR 70.36(1)(b),[12] which required a decision on the motion for a temporary injunction within 180 days. The majority opinion does so as it also chooses to ignore our obligation to supervise all Wisconsin courts. Wis. Const. art. VII, § 3.[13]

¶73 As I begin, I remind the reader that under our constitutional supervisory authority, we have the power to decide whether parts of MMSD's Policies should be enjoined, as was requested in the Petition for Review. This court is vested with "superintending and administrative authority over all courts." Koschkee v. Evers, 2018 WI 82, ¶8, 382 Wis. 2d 666, 913 N.W.2d 878 (quoting Wis. Const. art. VII, § 3). This superintending authority is "as broad and as flexible as necessary to insure the due administration of justice in the courts of this state." Id. (quoting In re Kading, 70 Wis. 2d 508, 520, 235 N.W.2d 409 (1975)). Further, this power is not

---

[12] Supreme Court Rule 70.36 requires circuit court judges to "decide each matter submitted for decision within 90 days of the date on which the matter is submitted to the judge in final form." Judges may file for extensions with the chief judge of the judicial administrative district. However, even this extension, which must be requested and granted within five days of the overrunning the original 90 day timeline, is available for "one additional period of 90 days." SCR 70.36(1)(a). Any further extension must be granted by the Supreme Court and will be done only "for specific matters as exigent circumstances may require." SCR 70.36(1)(b).

[13] Article VII, Section 3 of the Wisconsin Constitution provides: "The supreme court shall have superintending and administrative authority over all courts."

15

strictly limited to situations in which it was previously used, continuing supervision is required in response to changing needs and circumstances. Koschkee, 382 Wis. 2d 666, ¶8.

¶74 In Koschkee, we considered our authority over the practice of law, in and out of court as connected with the exercise of judicial power and the administration of justice. Id., ¶9. We employed our supervisory authority because we concluded that the "necessities of justice" required us to do so. Id., ¶12. We used it to conclude that "Evers and DPI are entitled to counsel of their choice and are not required to be represented by DOJ." Id. Here, we should exercise our supervisory authority over a circuit court's failure to decide a motion that has been pending for more than two years contrary to SCR 70.36 and contrary to the administration of justice.

¶75 The pending motion is for a temporary injunction. In Wisconsin, courts may grant a temporary injunction to restrain a party's actions:

> When it appears from a party's pleading that the party is entitled to judgment and any part thereof consists in restraining some act, the commission or continuance of which during the litigation would injure the party, or when during the litigation it shall appear that a party is doing or threatens or is about to do, or is procuring or suffering some act to be done in violation of the rights of another party and tending to render the judgment ineffectual.

Wis. Stat. § 813.02(1)(a). The motion for temporary injunction should have been decided years ago. In its present undecided state, there is no decision from which to appeal, and yet the circuit court's failure to decide the pending motion for a temporary injunction stands in the way of the administration of

16

justice in this litigation. This is so because by failing to decide the pending motion, the circuit court effectively denied it and also denied the parents the opportunity to appeal an unfavorable ruling.

¶76 In order to fully understand this dissent, it is important to appreciate the fundamental constitutional right upon which these proceedings are grounded. Therefore, a review of long-standing protections for the relationship of parent and child will be helpful.

¶77 For hundreds of years, parents' right to direct the upbringing and education of their children has been a fundamental and protected right under Article I, Section 1 of the Wisconsin Constitution and the Due Process Clause of the Fourteenth Amendment. Michels v. Lyons, 2019 WI 57, ¶15, 387 Wis. 2d 1, 927 N.W.2d 486; Jackson v. Benson, 218 Wis. 2d 835, 879, 578 N.W.2d 602 (1998); Wis. Indus. Sch. for Girls v. Clark Cnty., 103 Wis. 651, 668-70, 79 N.W. 422 (1899).

¶78 As many Supreme Court decisions have shown, the Due Process Clause of the Fourteenth Amendment of the United States Constitution protects parents' right to decide the upbringing of their own children. Meyer v. Nebraska, 262 U.S. 390, 403 (1923) (concluding that parents possessed the right to direct whether their children would study German in elementary school under the Fourteenth Amendment); Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary, 268 U.S. 510, 534-35 (1925) (concluding that the state requirement that children must attend public schools was contrary to the parents' Fourteenth Amendment

17

liberty interest of directing the upbringing and education of their children).

¶79 The United States Supreme Court has continually reinforced the primacy of parents when making decisions concerning the upbringing of their children, considering the right as "established beyond debate as an enduring American tradition." Wisconsin v. Yoder, 406 U.S. 205, 232-33 (1972); see also Prince v. Massachusetts, 321 U.S. 158, 166 (1944) ("It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder."). When it comes to a decision on "whether to expose their child[] to certain . . . ideas[,]" the parents, not the government, "should be the ones to choose." In re Custody of Smith, 969 P.2d 21, 31 (Wash. 1998), aff'd sub nom. Troxel v. Granville, 530 U.S. 57 (2000).

¶80 Serving as a foundation of this right is the presumption that parents "possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions." Parham v. J.R., 442 U.S. 584, 602 (1979). Furthermore, natural bonds of affection "lead parents to act in the best interests of their children." Id. (citing 1 W. Blackstone, Commentaries, at *447.). Of course, this presumption may be rebutted. However, "[t]he state's power to displace parental discretion is limited . . . and must be justified on a case-by-case basis." Schleifer by Schleifer v.

18

<u>City of Charlottesville</u>, 159 F.3d 843, 861 (4th Cir. 1998) (Michael, J., dissenting).

¶81 In <u>Troxel v. Granville</u>, which involved a Washington statute that permitted visitation rights "at any time" if visitation was in the "best interests of the child[,]" the Supreme Court held the statute was an unconstitutional interference with the fundamental right of parents to rear their children. <u>Troxel</u>, 530 U.S. at 67-78. The court explained that "[t]he liberty interest at issue in this case——the interest of parents in the care, custody, and control of their children——is perhaps the oldest of the fundamental liberty interests recognized by this Court." <u>Id.</u> at 65. The court reasoned that "there is a presumption that fit parents act in the best interests of their children" and providing grandparents greater access to grandchildren, despite the decision of the parent, is an unconstitutional interference with parental rights. <u>Id.</u> at 68.

¶82 Recently, courts in other jurisdictions have addressed the same subject matter as MMSD's incursion on parental rights in the matter before us. In <u>Eknes-Tucker v. Marshall</u>, No. 2:22-cv-184-LCB, 2022 WL 1521889, at *4 (M.D. Ala. May 13, 2022), the District Court for the Northern Division of Alabama decided that parents, not the state, are the proper decision-makers for medical treatment their child may receive involving gender-identity and transgender treatment. <u>Id.</u> There, the parents of transgender children challenged and sought to enjoin enforcement of a newly-passed "Vulnerable Child Compassion and Protection

19

Act" (the Act), which banned certain medical procedures used for the treatment of gender dysphoria in minors.[14]

¶83 Parent plaintiffs claimed that the Act violated "their constitutional right to direct the medical care of their children under the Due Process Clause of the Fourteenth Amendment." Id. at *7. In determining whether enforcement of the Act should be enjoined during the lawsuit, the court concluded that parents had a high likelihood of success on the merits of their constitutional claim under the Fourteenth Amendment. Id. The court reiterated that a "parent's right 'to make decisions concerning the care, custody, and control of their children' is one of 'the oldest of the fundamental liberty interests' recognized by the Supreme Court." Id. at *7 (quoting Troxel, 530 U.S. at 65-66). Furthermore, "[e]ncompassed within this right is the more specific right to direct a child's medical care." Eknes-Tucker, 2022 WL 1521889, at *7 (citing Bendiburg v. Dempsey, 909 F.2d 463, 470 (11th Cir. 1990) (recognizing "the right of parents to generally make decisions concerning the treatment to be given to their children").

¶84 Against this backdrop, the court reasoned that parents likely would succeed on the merits of their claim because the Act "prevents Parent Plaintiffs from choosing that course of treatment for their children by criminalizing the use of

---

[14] Gender dysphoria "is a clinically diagnosed incongruence between one's gender identity and assigned gender. If untreated, gender dysphoria may cause or lead to anxiety, depression, eating disorders, substance abuse, self-harm, and suicide." Eknes-Tucker v. Marshall, No. 2:22-cv-184-LCB, 2022 WL 1521889, at *1 (M.D. Ala. May 13, 2022).

20

transitioning medications to treat gender dysphoria in minors, even at the independent recommendation of a licensed pediatrician." Eknes-Tucker, 2022 WL 1521889, at *7.

¶85 When a government action "directly and substantially implicates a fit parent's fundamental liberty interest in the care and upbringing of his or her child, [governmental action] is subject to strict scrutiny review." Michels, 387 Wis. 2d 1, ¶22. "Ordinarily, where a fundamental liberty interest protected by the substantive due process component of the Fourteenth Amendment is involved, the government cannot infringe on that right 'unless the infringement is narrowly tailored to serve a compelling state interest.'" Johnson v. City of Cincinnati, 310 F.3d 484, 502 (6th Cir. 2002) (quoting Washington v. Glucksberg, 521 U.S. 702, 721 (1997)). The MMSD has identified no compelling state interest upon which MMSD contends the Policies are based.

¶86 The parents renewed their request for a temporary injunction in their Petition for Review, and they ask us to grant them relief. The pending status of the parents' motion before the circuit court is not a deterrent to our superintending authority, which is grounded in our constitutional obligation to supervise all Wisconsin courts. In the exercise of our superintending authority and in order to afford the administration of justice in this litigation, we should grant the temporary injunction under the undisputed facts and the law presented herein.

21

¶87  I begin by noting that the granting of a temporary injunction required the parents to show: "(1) a reasonable probability of success on the merits; (2) a lack of an adequate remedy at law; (3) that the movant will suffer irreparable harm in the absence of an injunction; and (4) that a balancing of the equities favors issuing the injunction."  Wisconsin Legislature v. Evers, No. 2020AP608-OA, unpublished order (Wis. Apr. 6, 2020) (order granting leave to commence an original action and enjoining Executive Order No. 74); see also Kocken v. Wis. Council 40, 2007 WI 72, ¶22, 301 Wis. 2d 266, 732 N.W.2d 828 (listing requirements for injunctive relief to be a "finding a likelihood of success on the merits, a likelihood of irreparable harm, and an inadequate remedy at law."); Spheeris Sporting Goods, Inc. v. Spheeris on Capitol, 157 Wis. 2d 298, 306, 459 N.W.2d 581 (Ct. App. 1990) (explaining a movant must show a reasonable probability of success on the merits, an inadequate remedy at law, and irreparable harm); Grootemaat, 89 Wis. 2d at 520.

¶88  The administration of justice often requires significant judicial effort.  But that is what the people of Wisconsin elected us to provide.  We are expected not to shirk our responsibilities when hard legal disputes are presented. This case is grounded in the contention that MMSD has usurped fundamental parental rights, some of which relate to healthcare decisions for their children.  The administration of justice requires that we not ignore the parents' plea for a judicial decision, as the majority opinion has done.

22

¶89 The parents satisfy each factor necessary to success on their motion for a temporary injunction. First, they have shown a strong likelihood of success on the merits of their claim that MMSD's Policies interfere with their constitutional right to raise their children as they think best. The lack of a temporary injunction also keeps MMSD in charge of enabling healthcare choices without parental consent for children who have gender-identity issues. The constitutional presumption is that parents will act in the best interest of their child. Troxel, 530 U.S. at 69. Allowing a school to reassign a child's gender, flips this constitutional presumption on its head by assuming that parents will not act in their child's best interest. Both the United States Constitution and the Wisconsin Constitution support the conclusion that MMSD's Policies cannot deprive parents of their constitutional rights without proof that parents are unfit, a hearing, a court order, and without according parents due process. Instead, under MMSD's explicit guidelines, parents are affirmatively excluded from decision-making unless their child consents.[15]

---

[15] MMSD's Policies affirmatively hide information from parents that relates to their children. For example, "School staff shall not disclose any information that may reveal a student's gender identity to others, including parents or guardians and other school staff, unless legally required to do so or unless the student has authorized such disclosure." MMSD Policies, 9. "Staff will respect student confidentiality throughout the investigation, be careful not to 'out' students while communicating with family/peers, and involve the targeted student throughout the intervention process." Id., 11. "In MMSD with the permission of our students, we will strive to include families along the journey to support their LGBTQ+ youth." Id., 16. "Students will be called by their affirmed name and pronouns regardless of parent/guardian permission to

23

¶90 Parents have the constitutional right to direct the upbringing and education of their children. Article I, Section 1 of the Wisconsin Constitution provides fundamental protection for that parental right. Jackson, 218 Wis. 2d at 879 (explaining that "Wisconsin has traditionally accorded parents the primary role in decisions regarding the education and upbringing of their children."). We have interpreted Article I, Section 1 of the Wisconsin Constitution as affording the same protections as are provided by the Fourteenth Amendment. Mayo v. Wis. Injured Patients & Families Comp. Fund, 2018 WI 78, ¶35, 383 Wis. 2d 1, 914 N.W.2d 678. The right of parents to decide on the upbringing of their children has been so long established as "beyond debate as an enduring American tradition." Yoder, 406 U.S. at 232-33.

¶91 What is occurring in Wisconsin schools has been occurring in other schools around the country. Parents are bringing their concerns to court, and courts around the country have confirmed that parental constitutional rights are violated when they are prevented from being involved in gender-identity concerns of their children. Eknes-Tucker, 2022 WL 1521889, at *7. Accordingly, I conclude that parents have shown a strong likelihood of success on the merits of their claim.

¶92 Second, parents have no remedy at law. Without an injunction to temporarily enjoin MMSD from implementing its policies, MMDS will continue to enforce them. Parents will not be told that their child is socially transitioning to a sex

_____

change their name and gender in MMSD systems." Id., 18.

24

different from that noted at birth without the child's consent, yet social transitioning is a healthcare choice for parents to make.  Without an injunction, the parents have no way of becoming involved in such a fundamental decision.

¶93  Third, without an injunction the parents will suffer irreparable harm.  The MMSD Policies are on-going and continue to invade parents' constitutional right to parent their children.  Many courts consider the on-going infringement of a constitutional right enough and require no further showing of irreparable injury.  See e.g., Awad v. Ziriax, 670 F.3d 1111, 1131 (10th Cir. 2012).  We should do so as well.

¶94  Fourth, the balance of equities favors the parents, who are ready, willing and able to parent their children.  The public interest is served by validation of parental constitutional rights and any harm alleged by MMSD from parental involvement in decision-making for their children runs directly contrary to the presumption that parents act in the best interests of their children.  Troxel, 530 U.S. at 69. Furthermore, because MMSD's Policies are carried out by school officials who are state actors, whose conduct described in the MMSD Policies infringes on the parents' constitutional right to make important choices for their children, the school officials must yield to the constitution.  Gruenke v. Seip, 225 F.3d 290, 307 (3d Cir. 2000) (explaining that "[i]t is not educators, but parents who have primary rights in the upbringing of children. School officials have only a secondary responsibility and must respect these rights.").

25

¶95 The parents brought a motion for a temporary injunction to enjoin MMSD from: (1) enabling children to socially transition to a different gender-identity without parental consent; (2) preventing teachers and other staff from telling parents that their child may have gender-identity concerns; and (3) deceiving parents by using different names and pronouns in front of parents than are used at school. The parents have satisfied all the necessary criteria for a temporary injunction.

### III. CONCLUSION

¶96 In conclusion, to be clear, although I address the question of pseudonym use, the heart of this case is the fundamental, constitutional presumption that parents have the right to raise their children according to their beliefs of what is in the child's best interests. Parental names are not relevant to vindicating that constitutional right. Here, the circuit court erred when it concluded that it could not permit the parents to employ pseudonyms in this lawsuit. The court of appeals erred in affirming that decision, even while noting that the circuit court did have the power to permit the use of pseudonyms. The majority opinion errs by concluding that there is no authority for anonymous litigation in Wisconsin.[16]

¶97 Furthermore, I conclude that we can and should employ our constitutional supervisory authority to decide this constitutional controversy because it cries for judicial resolution. This court, as a court of last resort, should act

---

[16] Majority op., ¶¶15-20.

affirmatively to grant the parents' request for a temporary injunction that enjoins MMSD from: (1) enabling children to socially transition to a different gender-identity without parental consent; (2) preventing teachers and other staff from telling parents that their child may have gender-identity concerns; and (3) deceiving parents by using different names and pronouns in front of parents than are used at school.

¶98 The majority opinion defends abdication of its responsibility to address parents' constitutional arguments by attacking the dissent's support of parental rights. For the reasons set out above, I conclude that the circuit court erred in not granting the temporary injunction that was requested in February of 2020. Because the majority opinion chooses not to decide the controversy presented, I respectfully dissent.

¶99 I am authorized to state the Chief Justice ANNETTE KINGSLAND ZIEGLER and Justice REBECCA GRASSL BRADLEY join this dissent.